**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

ESTATE OF MATTHEW HOLMES,
by and through administrator, WENDY COUSER,
as administrator and individually,

        Plaintiff,

v.                                 Case No.  18-1221-JWB

CHRIS SOMERS, et al.,

        Defendants.

## MEMORANDUM AND ORDER

This case comes before the court on Defendants' motions to dismiss (Docs. 33, 38, 51, 53, 61).  The motion has been fully briefed and is ripe for decision.  (Docs. 34, 39, 52, 54, 60, 62, 65, 67, 68, 73, 74, 82, 83, 86.)  Defendants' motions are GRANTED IN PART AND DENIED IN PART for the reasons stated herein.

## I.    Materials Outside the Pleadings

This action arises from the shooting of Matthew Holmes by McPherson County Sheriff's Deputy Chris Somers on August 28, 2017.  Before setting forth the facts applicable to the pending motions, the court must first determine whether materials outside the pleading should be considered by the court at this stage.[1]

Videos of the Incident.  Multiple videos have been submitted as exhibits in this matter. The videos include both videos from cameras worn by Defendant officers[2] and from patrol cars. The following videos have been submitted: 1) Skyler Hinton's body cam video (Doc. 39, Exh.

---

[1] No party has requested that the court convert the pending motions to dismiss to motions for summary judgment.

[2] Although some individual Defendants are deputies, the court may refer to all individual Defendants as officers throughout this opinion.

1); 2) Joshua Hulse's dash cam video (Doc. 39, Exh. 2); 3) Officer Minkevitch's body cam video (Doc. 34, Exh. A); 4) Officer Hawpe's body cam video (Doc. 34, Exh. B); 5) Deputy Gayer's body cam video (Doc. 34, Exh. C); and 6) Chris Somers' body cam video (Doc. 34, Exh. D).

Defendants assert that the court may consider the videos on the pending motions to dismiss because the "video" is referenced in the complaint and central to the claims. Plaintiff's complaint makes one reference to the "video." In paragraph 41, Plaintiff states that "Defendant Somers' account that Mr. Holmes gained control of a weapon is contradicted by the video of the shooting." (Doc. 1 at 7.) Plaintiff did not attach any video to her complaint. Plaintiff objects to the use of the videos at this stage of the proceedings. Plaintiff, however, does not assert that the videos are not authentic copies of the events that transpired during the evening of the shooting.

On a motion to dismiss, the court may consider the complaint itself and any attached exhibits or any documents incorporated by reference. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009); *Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998) ("[C]ourts have broad discretion in determining whether or not to accept materials beyond the pleadings."); *GFF Corp. v. Assoc. Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384–85 (10th Cir. 1997). A court also "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Id.* Plaintiff states that she had portions of certain videos prior to drafting the complaint but did not have all the videos. Plaintiff contends that she did not incorporate the video into her complaint. Plaintiff also asserts that the video is not central to her claim as other evidence, including witnesses and reports, support the claims in the complaint.

Defendants have cited various authority in support of their position that the court may consider the videos in ruling on a motion to dismiss. Much of the authority, however, can be

distinguished as several cases were at the summary judgment stage and, in some cases, the plaintiffs either attached the videos as exhibits or did not object to their consideration. *See Scott v. Harris,* 550 U.S. 372, 380–81 (2007) (summary judgment); *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) (attached video to complaint); *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 380 (S.D.N.Y. 2013) ("Neither party contests the appropriateness of the Court's consideration of the recordings without converting the instant Motions to ones for summary judgment."); *Hartman v. Walker*, 685 F. App'x 366, 368 (5th Cir. 2017) (exhibit attached to complaint); *Carabajal v. City of Cheyenne, Wyoming*, 847 F.3d 1203, 1207 (10th Cir.), *cert. denied sub nom. Carabajal v. City of Cheyenne, Wyo.*, 138 S. Ct. 211, 199 L. Ed. 2d 118 (2017) (considering video at summary judgment stage); *Garcia v. Does*, 779 F.3d 84, 87-88 (2d Cir. 2015) (attached to complaint; parties did not contest consideration); *Estate of Ronquillo by & through Estate of Sanchez v. City & Cty. of Denver*, 720 F. App'x 434, 437 (10th Cir. 2017) (video attached as an exhibit to complaint).

Largely depending on the facts and the parties' positions, courts in this district have gone both ways, sometimes considering a video in the context of a motion to dismiss and at other times declining to do so. *Albers v. Jenison*, No. 18-2185-DDC-JPO, 2018 WL 5311862, at *1 (D. Kan. Oct. 26, 2018) (plaintiff did not object); *Myers v. Brewer*, No. 17-2682, 2018 WL 3145401, at *1–2 (D. Kan. June 27, 2018) (videos central to complaint and part of the record in another court case); *McHenry v. City of Ottawa*, No. 16-3726-DDC, 2017 WL 4269903, at *4 (D. Kan. Sept. 26, 2017) (declining to consider the video); *Choate v. City of Gardner, Kansas*, No. 16-2118-JWL, 2016 WL 2958464, at *3 (D. Kan. May 23, 2016) (considered videos).

After reviewing the parties' briefing, the court declines to consider the videos in deciding the motions to dismiss. Six different videos have been submitted in support of the motions. The

parties' memoranda conflict as to the events occurring on the videos, the statements made therein, and the party making those statements. At this stage, the court cannot evaluate competing interpretations of the videos and, having reviewed the videos, the court finds that certain events and statements included therein may be susceptible to more than one interpretation. Ultimately, evaluation of the videos in this case will be aided by testimony and possibly other forms of evidence that can be considered at summary judgment or at trial. While the court's decision here does not mean that the court would never consider a video on a motion to dismiss, the court declines to do so in this case. Defendants are free to rely on the videos at the summary judgment stage to the extent that is consistent with the law regarding video evidence.

December 12, 2017, Statement by McPherson County Attorney. The City of Newton Defendants ("NPD Defendants") have attached the Statement issued by McPherson County Attorney Greg Benefiel regarding the death of Holmes. Defendants assert that the court should consider the Statement as Plaintiff quotes from the Statement in her complaint. (Doc. 39 at 3.) The complaint states that "In order to provide post-hoc justification, Defendant Somers fabricated that he saw Mr. Holmes with his hands on a gun. There is absolutely no evidence to support this claim, as the McPherson County Attorney's Office admits: 'There is no evidence that Holmes actually gained control of Cpl. Hawpe's duty weapon.'" (Doc. 1 at 7.) Plaintiff objects to the court's consideration of the Statement on the basis that it is hearsay and is not authenticated. (Doc. 60 at 53.) Defendants do not respond to Plaintiff's objection. (Doc. 74.) The court declines to consider the Statement in deciding the pending motions to dismiss.

<u>Court Records in Other Actions</u>

The NPD Defendants have also submitted exhibits that include court records from excessive force actions that are cited in Plaintiff's complaint. (Doc. 39.) The records are submitted for the purpose of determining whether the underlying allegations in the complaints were meritorious and substantially similar to the allegations in this complaint. (Doc. 39 at 16-17.) Although the court can take judicial notice of publicly filed court documents, the court declines to review the records for the purpose of determining whether these alleged instances of misconduct were meritorious and substantially similar in order to establish the existence of a policy and/or deliberate indifference. Such determination is more appropriate for summary judgment. At this stage, the court will consider only the allegations in the complaint.

## II.     Facts

The following facts are taken from the allegations in the complaint, without regard to the evidence contained in the videos. Additional facts are noted throughout this order. On August 28, 2017, officers were attempting to stop Holmes, who was driving his vehicle.[3] The officers were from the Harvey County Sheriff's Office ("HCSO"), the McPherson County Sheriff's Office ("MCSO") and the City of Newton Police Department ("NPD"). In addition to naming individual defendants, Plaintiff has also asserted claims against unknown officers from those agencies. The named individual Defendants include Chris Somers and Jason Achilles[4], deputies of the MCSO, and Jerry Montagne, the Sheriff of McPherson County. Defendants Anthony Hawpe and Skyler Hinton are all law enforcement officers of the NPD. Defendant Chad Gay is the Sheriff of Harvey County.

---

[3] The complaint does not allege the crime, if any, that prompted the officers to activate their emergency lights and ultimately stop Holmes.
[4] Although the complaint alleges that Achilles is an officer of the NPD (Doc. 1 at 4), Achilles' motion clarifies that he is a deputy with the MCSO. (Doc. 34.)

Holmes was 24 years old in August 2017. Holmes is African-American and suffered from schizophrenia. Wendy Couser is Holmes' mother and the court-appointed administrator for Holmes' estate. Couser was previously employed by the NPD for several years. The NPD Defendants knew Holmes personally and were aware that he suffered from schizophrenia.

On the evening of August 28, Holmes was fleeing from officers in his vehicle. After stopping his vehicle, Holmes remained in his car for approximately three minutes before exiting. According to the complaint, Holmes exited slowly and with his hands raised.[5] Holmes was unarmed and his hands were empty. Almost immediately after Holmes exited the vehicle, Defendant Achilles shot Holmes with a bean bag gun and Defendant Somers fired an electroshock weapon at Holmes. Defendant Hawpe then allegedly drove Holmes to the ground. An unknown HCSO[6] officer allegedly hit Holmes on his head with the butt of a shotgun. After several seconds, a shot was heard. Defendant Somers had fired his weapon into Holmes' back. After the shot, Hawpe allegedly punched Holmes in the face several times. Defendant Hinton then allegedly used an expandable baton to strike Holmes several times. This entire event lasted approximately 21 seconds.

Plaintiff alleges that the individual Defendants acted out of anger and rage and were motivated by Holmes' race. After Holmes was shot, the individual Defendants allegedly failed to provide first aid care. The video recordings were allegedly turned off. Holmes did not

---

[5] Although the court is not considering the videos in deciding this motion, the court notes that the videos belie the assertion that Holmes exited the vehicle with his hands raised. Indeed, the videos depict a much more chaotic scene than suggested by the complaint. Nevertheless, rather than wade into the morass of trying to sort out what facts are indisputable from the video and which ones are debatable or in need of additional testimony to sort out, the court accepts the facts as alleged in the complaint at this stage, noting that the facts ultimately established in this case may differ considerably from those recited herein.

[6] The complaint states at page 2 that the officer was employed by HCSO. On page 6, the complaint states that this officer was from HCSO (or MCSO or NPD). The parties' briefing indicates that Plaintiff believes this officer was an HCSO officer.

immediately succumb to his injuries but later died from the gunshot wound. The complaint alleges that Holmes never touched or took possession of any weapon during the altercation.

The complaint asserts several claims against Defendants. All Defendants have moved to dismiss the complaint in its entirety on the basis that it fails to state a valid claim for relief and that the individual Defendants are entitled to qualified immunity. The court will address the claims in turn.

### III.    Standards

Rule 12(b)(6). In order to withstand a motion to dismiss for failure to state a claim, a complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007)). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

Section 1983 Qualified Immunity. The individual Defendants move for dismissal on the basis of qualified immunity. "Individual defendants named in a § 1983 action may raise a defense of qualified immunity." *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 460 (10th Cir. 2013). Qualified immunity "shields public officials ... from damages actions unless their conduct was unreasonable in light of clearly established law." *Gann v. Cline*, 519 F.3d 1090, 1092 (10th Cir. 2008) (quotations omitted). When the defense of qualified immunity is asserted, a plaintiff must show: "(1) that the defendant's actions violated a federal constitutional or

statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Cillo*, 739 F.3d at 460.

For a right to be clearly established, the contours of that right must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). A right is clearly established if there is a "Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts found the law to be as the plaintiff maintains." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011) (quoting *Stearns v. Clarkson*, 615 F.3d 1278, 1282 (10th Cir. 2010)). The court must determine "whether the violative nature of particular conduct is clearly established." *Ziglar v. Abbasi,* 137 S. Ct. 1843, 1866 (2017) (internal quotations omitted).

In doing so, the court is not required to find that "'the very action in question has previously been held unlawful.'" *Id.* at 1866 (quoting *Anderson*, 483 U.S. at 640); *see also Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) ("A previous decision need not be materially factually similar or identical to the present case; instead, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.")

> There "need not be a case precisely on point." *Redmond v. Crowther*, 882 F.3d 927, 935 (10th Cir. 2018). But "it is a 'longstanding principle that clearly established law should not be defined at a high level of generality.'" *Id.* (quoting *White v. Pauly*, —— U.S. ——, 137 S. Ct. 548, 552, 196 L. Ed. 2d 463 (2017) (per curiam) ); see also District of Columbia v. Wesby, —— U.S. ——, 138 S. Ct. 577, 590, 199 L. Ed. 2d 453 (2018) ("The clearly established standard ... requires a high degree of specificity." (quotations omitted)). "[T]he salient question ... is whether the state of the law ... gave [the defendants] fair warning that their alleged treatment of [the plaintiffs] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002).

*Doe v. Woodard*, 912 F.3d 1278, 1289 (10th Cir. 2019). The test is whether "the unlawfulness of the officer's conduct '[is] apparent'" "in the light of pre-existing law." *Ziglar,* 137 S. Ct. at 1867 (quoting *Anderson*, 483 U.S. at 640).

Qualified immunity defenses are usually resolved at the summary judgment stage, although "district courts may grant motions to dismiss on the basis of qualified immunity." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014).

<u>Supervisor Liability.</u>  Vicarious liability is inapplicable to section 1983 claims. *Iqbal*, 556 U.S. at 676. As such, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* A plaintiff may also plead a claim against a "defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy" which caused the constitutional harm. *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010). Therefore, personal liability includes both personal involvement or supervisory liability due to a policy. *Brown v. Montoya*, 662 F.3d 1152, 1164-1165 (10th Cir. 2011) (Personal liability through "his personal participation" "or the promulgation of a policy.").

If the basis of liability is a policy, Plaintiff must prove that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds*, 614 F.3d at 1199. "An affirmative link must exist between the constitutional deprivation and the supervisor's personal participation, exercise of control or direction, or failure to supervise." *Quint v. Cox*, 348 F. Supp. 2d 1243, 1250 (D. Kan. 2004).

Municipal Liability.  Municipal liability requires more than a violation by one of the municipality's officers.  Plaintiff must sufficiently allege: (1) that a violation was committed by an officer; (2) that there is a municipal policy or custom; and (3) a "direct causal link between the policy or custom and the injury alleged."  *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006).  A policy or custom includes the following: 1) a "formal regulation or policy statement;" 2) an informal custom that amounts to a widespread and well-settled practice; 3) a decision of an employee with final policymaking authority; 4) ratification by a final policymaker of a subordinate's decision; or 5) "failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused."  *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010).

## IV.    Analysis

### A. Claims Against McPherson County, Harvey County, McPherson County Sheriff's Office, and Harvey County Sheriff's Office

Defendants move for dismissal of all claims against McPherson County, Harvey County, McPherson County Sheriff's Office, and Harvey County Sheriff's Office on the basis that these entities cannot be sued under Kansas law.  (Docs. 34 at 23-24; 54 at 22-23.)   In order to state a claim against a county, Plaintiff must sue the "board of county commissioners" of the county.  K.S.A. 19-105.  With respect to the Sheriff's Office, such an entity is not capable of being sued without statutory authorization.  *Creamer v. Ellis Cty. Sheriff Dep't*, No. 08-4126-JAR, 2009 WL 1870872, at *5 (D. Kan. June 29, 2009) (citing *Lindenman v. Umscheid*, 255 Kan. 610, 875 P.2d 964, 977 (1994).  The Kansas legislature has not provided a county sheriff's department with the capacity to sue or be sued.  *Id.*

Plaintiff's response does not contest that this is an accurate representation of the law. Rather, Plaintiff asserts that her municipal liability claims, with respect to the counties, are against the sheriffs.  Plaintiff states as follows:

> Under Kansas law, the sheriff is independently elected and is solely responsible for the policies and training of sheriff employees. *Seifert v. Unified Government of Wyandotte County/Kansas City, Kan.*, No. 11–2327–JTM, 2012 WL 2448932, at *6 (D. Kan. June   26, 2012) (citing *Wilson v. Sedgwick County Bd. of County Com'rs*, No. 05–1210–MLB, 2006 WL 2850326, at *3–4 (D. Kan. Oct. 3, 2006). Plaintiff's municipal liability claims are directed at Defendant Montagne, and not the McPherson County Sheriff's Office or McPherson County proper. Plaintiff does not dispute that Kan. Stat. Ann. § 19-105 requires any claims against County defendants to be titled as against their respective County Board of Commissioners. Plaintiff proposes amending her complaint (where required) to correct this error after the Court has had an opportunity to rule on Defendants' substantive arguments.

(Doc. 60 at 66, n. 14.)[7]

The court finds that the claims against both Sheriff's Offices must be dismissed as they are not entities that can be sued under Kansas law.  With respect to the counties, Plaintiff has failed to sue the board of county commissioners for each county.  Plaintiff cannot maintain a claim against the "County" without suing the respective board.  K.S.A. 19-105.  Therefore, the counties must also be dismissed.  Plaintiff states that she will seek to amend her complaint to fix her error.[8]  At this time, the court is not faced with a proposed amended complaint and therefore declines to address any proposed amendment.

**B.  Section 1983 Claims for Excessive Force - Individual Defendants**

Plaintiff's complaint asserts that the individual Defendants violated Holmes' constitutional rights under the Fourth and Fourteenth Amendments.  "Excessive force claims can be maintained under the Fourth, Fifth, Eighth, or Fourteenth Amendment ... and each carries with

---

[7] With respect to Sheriff Gay, Plaintiff has essentially stated the same position.  Doc. 67 at 19, n. 3.
[8] The court declines to treat Plaintiff's proposal as a motion for leave to amend.  Plaintiff must comply with this court's rules in seeking to amend.  *See* D. Kan. R. 15.1.

it a very different legal test." *Porro v. Barnes*, 624 F.3d 1322, 1325 (10th Cir. 2010). Excessive force claims arising from force used "leading up to and including an arrest" are properly analyzed under the Fourth Amendment. *Estate of Booker v. Gomez*, 745 F.3d 405, 419 (10th Cir. 2014) (citation and internal quotation marks omitted). The Fourteenth Amendment applies to pretrial detainees - "one who has had a 'judicial determination of probable cause as a prerequisite to [the] extended restraint of [his] liberty following arrest." *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 536 (1979)). Because Plaintiff's complaint alleges excessive force used during Holmes' seizure, the Fourth Amendment provides the applicable standard. *Humes v. Cummings*, No. 18-2123-DDC-GEB, 2018 WL 4600717, at *6 (D. Kan. Sept. 25, 2018). The Fourth Amendment is applicable to Defendants, as state actors, through the Fourteenth Amendment. *Bailey v. United States*, 568 U.S. 186, 192 (2013). To the extent the Plaintiff intended to assert a due process claim under the Fourteenth Amendment, it is dismissed as the Fourth Amendment is the proper standard in this action. *Booker*, 745 F.3d at 419.

The individual defendants move for dismissal on the basis that they are entitled to qualified immunity. As discussed above, Plaintiff must plead facts capable of supporting a finding that the individual Defendants violated Holmes' Fourth Amendment rights. Plaintiff must also show that the right was clearly established.

A claim asserting that a Defendant used excessive force to affect a seizure is governed by the Fourth Amendment's "reasonableness" standard. *Cty. of L.A. v. Mendez*, 137 S. Ct. 1539, 1546 (2017). "Determining whether the force used to affect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake.'" *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quoting

*Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). In reviewing whether a seizure is reasonable, the court is to consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* The court must analyze the circumstances as a reasonable officer would in the heat of the moment. *Id.* at 396–97. "We must take care to judge the situation 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Cavanaugh v. Woods Cross City*, 625 F.3d 661, 665 (10th Cir. 2010) (quoting *Graham*, 490 U.S. at 396)). The court recognizes that "police officers are often forced to make split-second judgments ... about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 397.

## Defendant Achilles, Somers, Hawpe, Hinton and Unknown Officer[9]

The court must view the factors in the light most favorable to Plaintiff. Turning to the first factor, the severity of the crime, only the HCSO Defendants offer any argument. They assert that the crime at issue is fleeing the police. (Doc. 54 at 13.) Viewing the complaint, the court agrees. The court, however, disagrees with the HCSO Defendants' view of the crime as a felony. Under Kansas law, a first conviction for fleeing or attempting to elude a pursuing police officer is a misdemeanor unless Holmes additionally committed any of the acts described in K.S.A. 8-1568(b)(1) or is attempting to elude capture for commission of a felony. K.S.A. 8-1568(b)(2). At this time, the allegations state that Holmes was fleeing the police. There are no additional allegations regarding his actions prior to fleeing nor are there any allegations that

---

[9] Defendants do not move for dismissal of the unknown officer who allegedly hit Holmes with a shotgun and, clearly, the unknown officer has not been served in this matter. The HCSO Defendants do argue that the facts in the complaint are not sufficient to state a claim against the unknown officer. (Doc. 54 at 12-14.) An analysis as to whether the complaint sufficiently alleges a claim against the unknown officer is necessary in order to determine if there is supervisory and municipal liability against Sheriff Gay. Therefore, the court has included the allegations of the use of force by the unknown officer in this section. However, if and when the unknown officer is identified and served, the unknown officer is free to assert defenses and arguments and will not be foreclosed from moving for dismissal on the basis of this order.

would support a conclusion that a felony could be charged under Kansas law. Therefore, viewing the allegations in a light most favorable to Plaintiff at this stage of the proceedings, the crime at issue was a misdemeanor. When officers suspect that a misdemeanor has been committed, this "reduces the level of force that was reasonable." *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1281 (10th Cir. 2007). "*Graham* establishes that force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest." *Id.* at 1285. Although the court does not view this as a minor crime because of the potential for injury to the public and officers from fleeing the police, the allegations must be viewed in a light most favorable to Plaintiff and, as alleged, this crime is a misdemeanor under Kansas law.

The second factor is whether the suspect poses a threat to the officers. The allegations in the complaint state that Holmes was not armed when he exited his vehicle, had his hands raised and empty, and did not attempt to touch or grab an officer's gun. There are no allegations that Holmes was threatening or confrontational. At this stage, the court must view the allegations in a light most favorable to Plaintiff. Defendants' briefs all argue this factor on the basis of the videos. (Doc. 34 at 10-11.) As discussed, the court has declined to consider the videos at this stage. The allegations as stated in the complaint do not support a finding that Holmes posed a threat to the officers or any other individual.

Finally, the third factor is whether Holmes was actively resisting arrest or attempting to flee. All Defendants argue that this factor weighs against Plaintiff because of actions that are allegedly shown in the videos. Again, this court has not considered the videos. Defendants also argue that Holmes had been fleeing from Defendants prior to the stop. However, the Tenth Circuit has held that "initial resistance does not justify the continuation of force once the resistance ceases." *McCoy v. Meyers*, 887 F.3d 1034, 1051 (10th Cir. 2018). Recently, the

Tenth Circuit reiterated this holding and found that changed circumstances do not support a finding that an individual was resisting arrest. *Osterhout v. Morgan*, ---F. App'x---, 2019 WL 689797 (10th Cir. Feb. 19, 2019).

In *Osterhout*, the plaintiff had been fleeing from police, although the plaintiff argued that he did not know it was the police who were following him. After stopping his motorcycle, the plaintiff had his hands up and did not resist arrest. The officer allegedly hit the plaintiff in the face without warning, which resulted in a broken nose and other injuries. In reviewing the *Graham* factors, the Tenth Circuit held that a "reasonable jury could conclude based on this evidence that Officer Morgan 'should have been able to recognize and react to the changed circumstances,' *McCoy*, 887 F.3d at 1050 (internal quotation marks omitted), and further conclude that under these circumstances, a reasonable officer would not have believed that Mr. Osterhout posed an immediate threat to the officers or the public." *Osterhout*, 2019 WL 689797, at *4. The Tenth Circuit further found that these same facts supported a finding that the last factor weighed in favor of a finding of excessive force. *Id.*

After reviewing the factors, the court finds that the allegations support a finding that the crime at issue was not severe, Holmes did not pose an immediate threat to the officers or others, and Holmes was not actively resisting arrest at the time of the force used by the individual Defendants. The complaint alleges that the officers' use of force included lethal force, a taser, bean bags, punches to the face and the use of a shotgun to hit Holmes in the face. Viewing the allegations in a light most favorable to Plaintiff, the court finds that a reasonable jury could conclude that all allegations of use of force by Achilles, Somers, Hawpe, Hinton and the Unknown Officer violated Holmes' Fourth Amendment rights. Moreover, based on the authority cited and the reasons stated above, the court finds that it would have been obvious to the

individual Defendants that it was unconstitutional to use even the least amount of force alleged in the complaint, punches to the face or a hit with a shotgun, on Holmes when he was "not resisting arrest, not attempting to flee, and there was no objective reason to believe that he posed an immediate threat to the officers or the public." *Osterhout*, 2019 WL 689797, at *5.

Clearly Established. The second prong requires the court to determine if the right was clearly established at the time of violation. Achilles argues that the right should be defined as "the right not to be shot with a non-lethal bean bag following a high speed police chase, after refusing to get out of the vehicle for several minutes, and then getting out of the vehicle yelling 'shoot me' while simultaneously disobeying officers' orders to get on the ground, all while his passenger remained uncontrolled in the vehicle." (Doc. 34 at 15-16.) The court declines to read the right so narrowly because the Supreme Court has clearly stated that the court is not required to find that "'the very action in question has previously been held unlawful.'" *Ziglar*, 137 S. Ct. at 1866. All individual officers make arguments that the right was not clearly established based on Holmes' actions as shown in the videos. Again, the court has not considered the videos and is viewing the facts alleged in the complaint in a light most favorable to Plaintiff.

The court finds that Tenth Circuit precedent makes it clear to a reasonable officer in each individual Defendant's position that using the force employed by the individual Defendants under the circumstances alleged was unconstitutional. The Tenth Circuit has repeatedly held that force is unconstitutional when used against individuals like Holmes "who were not suspected of serious crimes, posed little to no threat, and put up little to no resistance." *McCoy*, 887 F.3d at 1052 n. 21 (citing Tenth Circuit cases predating the present incident).

> For example, in *Morris v. Noe*, 672 F.3d 1185, 1190, 1195-96 (10th Cir. 2012), we held officers violated the plaintiff's Fourth Amendment rights when they threw him to the ground forcefully and without warning even though he had his hands raised, posed little or no threat to them or bystanders, was neither resisting arrest

nor attempting to flee, and    was suspected, at most, of misdemeanor assault. Similarly, in *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1309-10, 1315 (10th Cir. 2002), we held the district court erred in granting qualified immunity to an officer where the plaintiff, whom the officer suspected of committing credit card fraud, had presented evidence that the officer forcefully pushed him into a storefront window and wrenched his arm up his back before handcuffing him, despite the fact that the plaintiff was not resisting arrest or acting belligerently. And in *Casey*, [*v. City of Fed. Heights*, 509 F.3d 1278, 1286 (10th Cir. 2007)] we held that a reasonable jury could find an officer's use of force was excessive when he without warning grabbed and then tackled the plaintiff, who was suspected of a nonviolent misdemeanor, even though the plaintiff was not threatening anyone and was not attempting to flee. 509 F.3d at 1282-83.

*Osterhout*, 2019 WL 689797, at *5.

In light of these cases, the court finds that it would have been obvious to the individual Defendants that it was unconstitutional to use the force allegedly used by each of the individual Defendants on Holmes when he was "not resisting arrest, not attempting to flee, and there was no objective reason to believe that he posed an immediate threat to the officers or the public."[10] *Id.*

Therefore, the individual Defendants' motions to dismiss Plaintiff's excessive force claim based on qualified immunity are denied.

**<u>Defendant Montagne - Individual Capacity</u>**

Plaintiff has asserted claims against Montagne, the Sheriff of McPherson County, in both his individual and official capacity. As discussed previously, in order to sufficiently allege a claim against a supervisor, Plaintiff must either allege that Montagne personally participated in the violation or violated Holmes' rights as a result of his policy. The complaint fails to sufficiently allege either.

Plaintiff contends that she has sufficiently alleged that Montagne was present at the time of the incident. (Doc. 60 at 64.) Plaintiff, however, fails to cite to the allegation in the complaint

---

[10] This ruling does not imply that each individual Defendant had a duty to intervene. This ruling only finds that at this stage of the proceeding each individual Defendant's alleged use of force could be found to be an unreasonable use of force and that the law regarding each use of force was clearly established.

that alleges Montagne was present at the scene and involved in the use of force or the decision to use force. After reviewing the allegations, the court finds that Plaintiff has not sufficiently alleged that Montagne was personally involved in the incident by alleging that Montagne was at the scene and involved in the deprivation of Holmes' rights.

Plaintiff further contends that Montagne is personally liable because of a policy. Plaintiff states that she has sufficiently alleged "supervisory liability based on failing to train, supervise, and/or discipline officers regarding the use of force. Dckt. 1 at ¶¶ 45, 47, 49-56." (Doc. 60 at 64.) Those paragraphs state as follows:

45. The excessive force used against Matthew Holmes—an unarmed African-American—was not an isolated incident for these law enforcement agencies

47. On information and belief, McPherson County, MCSO, and/or the Sheriff of MCSO have taken no action to remedy the problem of MCSO officers' use of excessive force despite repeated complaints about excessive use of force by its officers.

49. The law enforcement agencies' and supervisors' failures to discipline Defendants here were not the first time they failed to discipline officers who unlawfully used force.

50. The three Departments' failure to train and discipline officers regarding the improper use of force causes, and/or encourages the use of excessive force, including but not limited to the unconstitutional deadly force, by officers employed by them.

51. The three Departments' records concerning their failure to train and discipline officers regarding the use of force illustrates their deliberate indifference to the rights of individuals, particularly including the rights of citizens who, like Matthew Holmes, were completely unarmed when they were shot.

52. In fact, and as further evidence of both the three Departments' policies and their deliberate indifference, since the shooting of Matthew Holmes, other citizens have been the victims of excessive force.

53. The three Departments' failures to train and discipline their officers with respect to their uses of excessive force also extend to those officers' unconstitutional use of an individual's race when electing to use force. Like Matthew Holmes, a number of victims of excessive force are people of color. As a

consequence, and upon information and belief, the three Departments allow police officers to frequently use race in their policing, including in their decisions to use force.

54. Officers from the three Departments use race when determining to use force against people of color in a manner disproportionate to their representation in the population, illustrative of their unconstitutional race-based practices.

55. On information and belief, Officers from the three departments are not trained in how to deal with, and arrest individuals with disabilities.

56. In particular, the three departments do not train their officers on how to accommodate individuals with mental illness during arrest, including strategies for de-escalation.

(Doc. 1 at 8-10.)

These allegations do not specifically identify actions taken by Montagne. "The complaint [must] make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008).

In order to state a claim against Montagne, Plaintiff must show that <u>Montagne</u> was responsible for a policy, that specific policy caused the violation of Holmes' rights, and that Montagne acted with the requisite state of mind. *Dodds*, 614 F.3d at 1199. "An affirmative link must exist between the constitutional deprivation and the supervisor's personal participation, exercise of control or direction, or failure to supervise." *Quint v. Cox*, 348 F. Supp. 2d 1243, 1250 (D. Kan. 2004).

Plaintiff cannot accomplish this by pleading allegations that do not specifically state what actions Montagne took. Viewing the allegations in a light most favorable to Plaintiff, Plaintiff has not shown that there is an affirmative link between the alleged violation and Montagne's alleged failure to supervise. Moreover, "[l]iability of a supervisor under § 1983 must be

predicated on the supervisor's deliberate indifference." *Serna v. Colorado Dep't of Corr.*, 455 F.3d 1146, 1154 (10th Cir. 2006). This requires that Montagne "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1154-55. Plaintiff's complaint fails to specifically allege facts that would support a finding that Montagne acted with deliberate indifference. Therefore, the excessive force claim against Montagne in his individual capacity must be dismissed.

## Defendant Gay - Individual Capacity

Plaintiff has asserted claims against Gay, the Sheriff of Harvey County, in both his individual and official capacity. Gay moves to dismiss those claims. (Doc. 54.) In response to Gay's motion, Plaintiff cites to her argument contained in Doc. 60 at 62-64 and 82-84, which is discussed *supra*. (Doc. 67 at 26.)

Plaintiff's allegations regarding Gay are just as lacking as the allegations against Montagne. The only specific allegation directed at Gay states that he is the Sheriff of Harvey County and oversees the operations of the HCSO. (Doc. 1 at 5.) Plaintiff's complaint fails to allege that Gay was personally involved in the alleged deprivation of Holmes' rights, as it fails to allege that he was present at the scene and involved in the use of excessive force. Plaintiff's complaint also fails to state a claim of supervisory liability against Gay due to a policy. The facts cited above and referenced in support of a claim against Gay do not allege Gay's involvement in a policy decision. Specifically, the complaint has not sufficiently alleged that Gay possessed responsibility for the operation of a policy that caused the alleged constitutional violation. Plaintiff's complaint also fails to specifically allege facts that would support a finding that Gay acted with deliberate indifference.

Therefore, Plaintiff's claim against Gay in his individual capacity must be dismissed.

## C. Equal Protection

Plaintiff claims that all individual Defendants[11] violated Holmes' right to equal protection in violation of the Fourteenth Amendment.  (Doc. 1 at 12.)  Plaintiff essentially alleges that Defendants used excessive force, in part, because of Holmes' race.  Defendants move to dismiss this claim.  In order to state a claim, Plaintiff must allege that that the Defendants' "actions had a discriminatory effect and were motivated by a discriminatory purpose."  *Marshall v. Columbia Lea Regional Hosp.*, 345 F.3d 1157, 1168 (10th Cir. 2003) (citing *United States v. Armstrong*, 517 U.S. 456, 465 (1996)).  Plaintiff's allegations regarding this claim include the allegation that Holmes was African-American; "Defendants acted out of anger and rage, motivated in part by Mr. Holmes' race": and that Plaintiff was subjected to "unlawful, unequal treatment on the basis of his race."  (Doc. 1 at 7, 12.)

Plaintiff's complaint fails to adequately allege both a discriminatory purpose and a discriminatory effect.  Plaintiff's allegations are entirely conclusory.  Moreover, Plaintiff wholly fails to specifically allege actions taken by the individual Defendants. The complaint simply lumps them all together.  Plaintiff must "make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him." *Smith v. United States*, 561 F.3d 1090, 1104 (10th Cir. 2009) (citations omitted).  In addition to alleging entirely conclusory allegations, by using "the collective term 'Defendants' or a list of the defendants named individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed."  *Robbins v. Oklahoma,* 519 F .3d 1242, 1250 (10th Cir. 2008).

---

[11] Although the Complaint generally refers to all Defendants in the allegations stating this claim, Plaintiff argues that the claim is against Achilles, Somers, Hawpe, Hinton and the unknown HCSO Officer.  (Doc. 67 at 15.)

Plaintiff has also wholly failed to allege a discriminatory effect. The complaint is silent as to any allegation that citizens similarly situated to Holmes were treated differently due to race.

Plaintiff argues that her allegations are similar to *Galloway v. Hadl*, 548 F. Supp. 2d 1215 (D. Kan. 2008), which was held to be sufficient to state a claim. That decision, however, was issued prior to *Iqbal*. 129 S. Ct. 1937. The court does not find *Galloway* persuasive in light of *Iqbal*. Moreover, the plaintiff in Galloway additionally alleged that the officers would not have used the same amount of force against an individual of another race. *Galloway*, 548 F. Supp. 2d at 1219.

The court finds that Plaintiff has failed to sufficiently allege facts that show the actions taken by the individual Defendants were motived by race and had a discriminatory effect. As Plaintiff has failed to allege a violation by any individual Defendants, the supervisors and municipalities cannot be liable on this claim. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1317–18 (10th Cir. 2002). Therefore, Defendants' motions to dismiss Plaintiff's Equal Protection claim are granted.

### D. Failure to Provide Medical Care

Plaintiff has asserted a claim against the individual Defendants under section 1983 for a failure to provide first aid. (Doc. 1 at 12-13.) Plaintiff does not allege what medical aid should have been provided nor does Plaintiff allege the individual Defendants delayed in their request for medical care. Plaintiff's complaint does not allege that the failure to provide "medical aid" caused Holmes' death. An individual who is injured during his apprehension has a due process right to medical aid. *See City of Revere v. Massachusetts General Hosp.*, 463 U.S. 239, 244 (1983). An officer that promptly requests medical attention satisfies his obligation to provide aid. *See id.*

In order to state a claim for a failure to provide medical care, Plaintiff's allegations must satisfy "both an objective and a subjective component" with respect to each Defendant.  *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005).  Plaintiff must first point to "objective evidence that the deprivation at issue was in fact sufficiently serious."  *Id.*  "[A] medical need is sufficiently serious if it is one ... that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Id.*  Holmes had been shot and, based on the allegations, the officers had knowledge of his injury which would have required medical attention.

The "subjective prong of the deliberate indifference test requires the plaintiff to present evidence of the prison official's culpable state of mind."  *Mata*, 427 F.3d at 751.  Again, Plaintiff has lumped all of the Defendants together and does not specifically allege actions taken or not taken by the named Defendants.  There are no allegations that any of the officers had the ability to provide specific medical care.  Plaintiff's response at Doc. 60 suggests that there was a delay in providing care, Holmes was left handcuffed which may have exacerbated his risk of death, and that the officers may have erroneously decided not to perform CPR on Holmes after he stopped breathing.  None of these allegations are contained in the complaint.[12]  (Doc. 60 at 52-54.)  The allegations in the complaint are not sufficient to show that the individual Defendants acted with a "culpable state of mind."  *Mata*, 427 F.3d at 751.  Plaintiff failed to specifically allege what each Defendant did and did not do and what should have been done in order to establish that each Defendant acted with the requisite state of mind.  The failure to do so is fatal to this claim.[13]  As Plaintiff has failed to allege a violation by any individual Defendants, the supervisory officers and municipalities cannot be liable on this claim.  *Olsen*, 312 F.3d at 1317–

---

[12] Again, the court has not reviewed the videos in deciding the instant motion.
[13] The court is not offering any opinion regarding the potential viability of such a claim as Plaintiff has not sought leave to amend as required by this court's local rules.

18.     Therefore, Defendants' motions to dismiss Plaintiff's claim of failure to provide medical care are granted.

### E.  Wrongful Death

All Defendants move for dismissal of Plaintiff's section 1983 wrongful death claim on the basis that such a claim is not available under Tenth Circuit authority.  A § 1983 claim "must be based upon the violation of plaintiff's personal rights, and not the rights of someone else." *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990).  Therefore, wrongful death claims are not actionable under section 1983.  *Myers*, 2018 WL 3145401, at *7.  The Tenth Circuit has held, however, that a decedent's estate may maintain a survival action under section 1983.  *Berry v. City of Muskogee, Okl.*, 900 F.2d 1489, 1506–07 (10th Cir. 1990).

Plaintiff cites to *Lowery v. County of Riley*, No. 04–3101–JTM, 2005 WL 1242376 at * 10-11 (D. Kan. May 25, 2005), for the suggestion that the law has changed.  In that case, however, Judge Marten allowed a claim for interference with familial relationships to proceed.  That is different than a claim for wrongful death.  A claim for interference with familial relationships requires "an allegation of intent to interfere with a particular relationship protected by the freedom of intimate association…." *Trujillo v. Board of County Comm'rs*, 768 F.2d 1186, 1190 (10th Cir. 1985).  Although Plaintiff, in her capacity as Holmes' mother, has alleged that she has suffered loss of companionship, she has failed to allege that the individual Defendants intended to interfere with that relationship.

Rather, Plaintiff's allegations appear to assert a claim for wrongful death which is not actionable.  Therefore, Defendants' motions to dismiss Plaintiff's wrongful death claim are granted.  Because all other claims set forth in the complaint are for violations of Holmes' rights,

they must be brought by Plaintiff in her capacity as administrator. *See Archuleta*, 897 F.2d at 497. Accordingly, any claims asserted by Plaintiff in her personal capacity must be dismissed.

### F. Survival Action

Plaintiff brings a survival action against Defendants alleging that Holmes suffered severe pain and emotional distress before his death. (Doc. 1 at 13-14.) All Defendants move for dismissal of this claim on the basis that it is not a separate action or is duplicative of Plaintiff's excessive force claim. As discussed, § 1983 claims are based on the violation of an individual's personal rights. An exception to this applies when an estate may bring claims on behalf of a deceased plaintiff. *Berry*, 900 F.2d at 1506–07. A § 1983 survival action is not a separate claim that has a separate award of damages. Rather, it "is essentially the assertion of the cause of action that the deceased would have had had he lived, requesting damages for violation of the decedent's rights." *Jaramillo v. Crain*, et al., No. 18-CV-00499-RM-KMT, 2019 WL 935113, at *3 (D. Colo. Feb. 26, 2019) (excessive force claim brought by the estate as a survival action) (quoting *Sager v. City of Woodland Park*, 543 F. Supp. 282, 288 (D. Colo. 1982)).

Therefore, Plaintiff's claim for a survival action under § 1983 is not viable as a separate action but rather provides standing for Plaintiff to bring Holmes' constitutional claims as the administrator of Holmes' estate. To the extent Plaintiff is attempting to bring a separate cause of action as a survival action, that claim is dismissed.

### G. Municipal and Supervisory Liability

Plaintiff asserts claims against Sheriffs Montagne and Gay and the City of Newton on the basis that Holmes' constitutional rights were violated due to a policy, failure to train and/or failure to supervise. All municipal Defendants move to dismiss these claims on the basis that they fail to state a claim. Additionally, Montagne and Gay argue that they are entitled to

Eleventh Amendment immunity because they are state actors. The court will address the claim for sovereign immunity first.

Eleventh Amendment Immunity

Under the Eleventh Amendment, unconsenting states are immune from federal suits for money damages. U.S. Const. amend. XI; *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). Such immunity, however, does not extend to counties, municipalities, or other local government entities. *Steadfast Ins. Co. v. Agric. In. Co.*, 507 F.3d 1250, 1253 (10th Cir. 2007) (citation omitted). In order to determine whether a particular official is a state entity, the court is to look to four primary factors:

> First, we assess the character ascribed to the entity under state law. Simply stated, we conduct a formalistic survey of state law to ascertain whether the entity is identified as an agency of the state. Second, we consider the autonomy accorded the entity under state law. This determination hinges upon the degree of control the state exercises over the entity. Third, we study the entity's finances. Here, we look to the amount of state funding the entity receives and consider whether the entity has the ability to issue bonds or levy taxes on its own behalf. Fourth, we ask whether the entity in question is concerned primarily with local or state affairs. In answering this question, we examine the agency's function, composition, and purpose.

*Steadfast*, 507 F.3d at 1253. This *Steadfast* test is similar to a test utilized by the Supreme Court in *McMillan v. Monroe County*, 520 U.S. 781 (1997), in which the Supreme Court analyzed whether a sheriff is a state or county policymaker under Alabama law for purposes of Section 1983 municipal liability. *See Reyes v. Bd. of Cnty. Comm'rs of Sedgwick Cnty.*, No. 07-2193-KHV, 2008 WL 2704160, at *7 (D. Kan. July 3, 2008). In *McMillian*, the Supreme Court held that the inquiry regarding the question of whether the sheriff is acting as a state or county official must be narrowed and the court must determine whether the sheriff is acting for the state in a particular area or issue. *See Reyes*, 2008 WL 2704160, at *7 (citing *McMillan*, 520 U.S. at 785.)

It is not an all or nothing approach.  *Id.*  Thus, the question here is whether the sheriffs are acting in a state or county capacity when they are engaged in local law enforcement activities.

The courts in this district that have reviewed whether sheriffs are immune are split on this issue, although most decisions favor a finding of immunity.  The Tenth Circuit, in an unpublished opinion, determined that Kansas sheriffs were immune under the Eleventh Amendment.  *See Hunter v. Young*, 238 F. A'ppx. 336, 338 (10th Cir. 2007).  In doing so, the Tenth Circuit's analysis was limited and did not discuss the *Steadfast* factors.  Notably, the issue in *Hunter* concerned treatment of a prisoner in a detention center and not policies concerning general law enforcement.  *Hunter*, 238 F. A'ppx. At 337.  A number of courts in the District of Kansas, mostly relying on *Hunter*, have subsequently held that Kansas sheriffs act on behalf of the state and are therefore immune from suit in federal court.  *See Broyles v. Marks*, No. 18-3030-SAC, 2018 WL 2321822, at *4 (D. Kan. May 22, 2018); *Self v. Cnty. of Greenwood*, No. 12-1317-JTM, 2013 WL 615652, at *2 (D. Kan. Feb. 19, 2013); *Brown v. Kochanowski*, No. 07-3062-SAC, 2012 WL 4127959, at *9 n.3 (D. Kan. Sept. 19, 2012), *aff'd* 513 F. App'x. 715 (10th Cir. 2013) (although the Tenth Circuit referenced the finding of immunity by the district court, there was no discussion regarding this issue).  In *Myers v. Brewer*, Judge Murguia went through the *Steadfast* factors and determined that Kansas sheriffs were entitled to immunity.  2018 WL 3145401, at *5–6.  The court did not explicitly discuss whether the finding was for a particular duty of the sheriff, but the allegations in the complaint were based on the alleged use of excessive force during an arrest.  *Id.*  Upon a review of the cases finding immunity, it appears that the *Myers*' decision reviewed the factors in coming to a conclusion while most of the other cases summarily found immunity while citing *Hunter*.

The decisions determining that sheriffs are not immune because they are an arm of a county and not a state include *Trujillo v. City of Newton*, No. 12-2380-JAR, 2013 WL 535747, at *10 (D. Kan. Feb. 12, 2013) and *Reyes*, 2008 WL 2704160, at *7–9. In *Reyes*, Judge Vratil did an extensive analysis regarding the *Steadfast* factors and determined that sheriffs were not acting as state officials when operating jails. In *Trujillo*, Chief Judge Robinson adopted the analysis in the *Reyes'* decision. *Trujillo* was also based on allegations of unconstitutional conduct in a county detention facility. 2013 WL 535747, at *3-5.

*Hunter* is an unpublished decision. Unpublished decisions by the Tenth Circuit are not binding although they may be persuasive authority. In light of the fact that the Tenth Circuit declined to consider the *Steadfast* factors in its decision and because the issue in *Hunter* concerned allegations regarding operation of a county jail, the court does not find *Hunter* persuasive.

After reviewing the relevant authority, this court is persuaded by Judge Vratil's reasoning in *Reyes* and finds that, with respect to local law enforcement activities, sheriffs are not arms of the state but rather of the county that they serve. Because the allegations in this case allege that the sheriffs failed to train, supervise, and discipline their officers in law enforcement practices, the court will address the factors by determining whether the sheriffs were acting as arms of the state or county in developing law enforcement policies for their office. Reviewing the *Steadfast* factors, the first factor requires the court to determine how state law characterizes the sheriff. The county sheriff is historically considered a "county office." *Reyes*, 2008 WL 2704160, *7 (citing K.S.A. 25–101; *Wall v. Harrison*, 201 Kan. 600, 603–04 (1968)). Also, the sheriffs' responsibilities are essentially limited to their respective counties. K.S.A. 19-813 (sheriffs must "keep and preserve the peace in their respective counties."); K.S.A. 22-2401a ("sheriffs and their

deputies may exercise their powers as law enforcement officers: (a) Anywhere within their county; and (b) in any other place when a request for assistance has been made by law enforcement officers from that place or when in fresh pursuit of a person.")

In *State v. Vrabel*, 301 Kan. 797, 798 (2015), the Kansas Supreme Court addressed the legislative purpose of K.S.A. 22-2401a, which limits law enforcement officers to their respective jurisdiction, with some exceptions. The Supreme Court stated as follows: "The legislative purpose for imposing territorial jurisdiction limitations on the exercise of police powers by city law enforcement officers is to maintain and protect the local **autonomy of neighboring cities and counties**, allowing each governmental unit to control the exercise of police powers within its respective jurisdiction. K.S.A. 2014 Supp. 22–2401a was not intended to create additional individual rights for criminal defendants." *Id.* (emphasis supplied). The Supreme Court further concluded that a "governing body of a city may endeavor to establish stringent policies on the use of force by law enforcement officers against the citizens of that city, but it would be hard-pressed to enforce its regulations against marauding law enforcement officers from other jurisdictions." *Id.* at 813. This language indicates that each county and city operate with autonomy from the state as they are able to independently establish their own policies regarding use of force. The state does not dictate or control policies regarding law enforcement.

The court finds that state law characterizes a sheriff as a county officer when the sheriff is implementing law enforcement policies, including training and discipling deputies. The court notes, however, that cases answering this question, and other questions, have quoted portions of the Kansas Supreme Court opinion in *Bd. of Cnty. Comm'rs v. Nielander*, 62 P.3d 247, 251 (Kan. 2003) for the proposition that the sheriff is a state officer and not a subordinate of the board of

county commissions. *See, e.g., Myers*, 2018 WL 3145401, at *6; *Seifert v. Unified Gov't of Wyandotte Cty. /Kansas City*, 779 F.3d 1141, 1159 (10th Cir. 2015).

In *Nielander*, the Kansas Supreme Court, in discussing the appellant's position, stated as follows:

> For their first assertion of error on appeal, Nielander and Jackson contend that the Board did not have the constitutional or statutory authority to hire or fire the duly appointed assistant to an elected county official.
>
> The sheriff is an independently elected officer whose office, duties, and authorities are established and delegated by the legislature. The sheriff is not a subordinate of the board of county commissioners and neither are the undersheriff or the sheriff's deputies and assistants. Rather, the sheriff is a state officer whose duties, powers, and obligations derive directly from the legislature and are coextensive with the county board. The undersheriff and the sheriff's deputies and assistants are subordinates of the office of sheriff. The board of county commissioners is the means by which the legislature finances the operation of the office of the sheriff. The board of county commissioners is not free to usurp the powers of the office of sheriff by controlling the hiring or firing of the deputies and assistants appointed by the sheriff.

*Nielander*, 275 Kan. at 261–62.

Many courts have utilized language from the second paragraph quoted above to discuss a sheriff's authority and characterization under state law. Upon a review of the state case record, however, the second paragraph is taken almost entirely verbatim[14] from a paragraph contained in the appellant's opening brief. The opinion, however, does not cite to the appellant's brief. That leads the court to conclude that there was either an oversight in the opinion by failing to cite to the brief or, alternatively, that the Kansas Supreme Court completely adopted the appellant's argument as law. The court concludes that it is more likely the former because the legal conclusions in the paragraph are not preceded by any indication that this is the Supreme Court's holding, nor are there any citations in the paragraph that would indicate that all the statements

---

[14] The Supreme Court's opinion uses an "and" that is not contained in the brief. The appellate brief also contains a typographical error which is not in the Supreme Court opinion. The opinion also uses "or" when the brief had used the word "nor."

contained therein are established law. That is to say, unlike the balance of the Kansas Supreme Court's analysis in *Nielander*, the sweeping conclusions set forth in the questionable paragraph are devoid of legal analysis or citation to authority. Also, the paragraph immediately preceding the paragraph in question indicates that the Kansas Supreme Court is setting forth the position of appellants and the succeeding four paragraphs largely set forth the positions of the various parties and *amici curiae*. Although the court finds that some of the statements contained within the paragraph are accurate statements of the law, such as that the sheriff is an independently elected officer and that the board of commissioners funds the sheriff's office, the statement that a sheriff is a state officer does not appear to be a conclusive statement of Kansas law. Therefore, in light of the confusion regarding this paragraph, the court declines to read *Nielander* as holding that a sheriff is categorically a state officer.

As for the second factor, the degree of the sheriff's autonomy from the State, sheriffs do have autonomy in personnel decisions and they are in charge of the county jail. *Nielander*, 275 Kan. at 263; K.S.A. 19–811. Kansas law requires sheriffs to take possession of prisoners committed by a judge of any county, issue process and writs, and serve jury summons. *Reyes*, 2008 WL 2704160, *8. Sheriffs also have responsibility for the conduct of their deputies and are the policymakers for their respective departments. *See* K.S.A. 19-805; *Seifert*, 779 F.3d at 1159; *see Vrabel*, 301 Kan. 797, 798 (cities and counties have autonomy for policies on use of force). Therefore, pertaining to setting policy on the use of force and the responsibility for the actions of the deputies, the sheriffs in this action have autonomy from state control.

The third factor, the source of the operating funds, clearly supports a finding that the sheriff is not an arm of the State. The sheriff's annual budget is determined by the board of county commissioners and not the state. K.S.A. 19–805(b), (c). As for the fourth factor,

whether the sheriff deals primarily with local or state concerns, Kansas law supports a finding that the sheriff deals primarily with local concerns. Kansas law authorizes sheriffs to conduct law enforcement within their respective counties unless they are asked for assistance or engaged in fresh pursuit. K.S.A. 22–2401a(1).

After a review of Kansas law and the *Steadfast* factors, the court finds that, for purposes of enforcing laws within their respective counties (which is the particular function at issue here), sheriffs are arms of the county that they serve. *See Reyes*, 2008 WL 2704160, at *7–8.

Therefore, Montagne and Gay's motions to dismiss on the basis of the Eleventh Amendment are denied.

Municipal Liability Claims

All Defendants contend that Plaintiff's claims of municipal liability are conclusory and fail to state a claim. The municipal liability claims are stated against the NPD, Sheriff Montagne, in his official capacity, and Sheriff Gay, in his official capacity.

Plaintiff alleges claims for municipal liability on the basis that Defendants (1) failed to supervise and train their officers; (2) encouraged misconduct by failing to investigate, punish, and discipline previous misconduct; and (3) allowed unconstitutional conduct as a widespread practice. (Doc. 1 at ¶ 82.) Plaintiff's response brief collapses the allegations into two theories: 1) failure to train and 2) failing to supervise and hold officers accountable for misconduct. (Doc. 60 at 64-73.) The court will address the allegations in turn.

Failure to Train

In order to state a claim against a municipality for failure to train, Plaintiff must prove the following:

(1) the officers exceeded constitutional limitations on the use of force; (2) the use of force arose under circumstances that constitute a usual and recurring situations

[sic] with which police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the party [sic] of the city toward persons with whom the police officers come into contact, and (4) there is a direct causal link between the constitutional deprivation and the inadequate training.

*Carr v. Castle*, 337 F.3d 1221, 1228 (10th Cir. 2003).

With respect to all Defendants, the court finds that the first element has been established as Plaintiff has sufficiently alleged claims of excessive force against the individual Defendants from all three municipalities. The court further finds that the second element is satisfied as the circumstances in this case constitute a usual and recurring situation.

For the third requirement,

[t]he deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. In most instances, notice can be established by proving the existence of a pattern of tortious conduct. In a narrow range of circumstances, however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations.

*Carr*, 337 F.3d at 1229.

Plaintiff states that the "three Departments' records concerning their failure to train and discipline officers regarding the use of force illustrates their deliberate indifference to the rights of individuals, particularly including the rights of citizens who, like Matthew Holmes, were completely unarmed when they were shot." (Doc. 1 at ¶ 51.) Plaintiff further alleges that all three Departments fail to train regarding the use of excessive force and, upon information and belief, failed to train the officers regarding individuals with disabilities. Plaintiff alleges that the Departments fail to train their officers in how to de-escalate situations with individuals who have disabilities.

Specifically, Plaintiff alleges that NPD has "been the subject of multiple complaints related to claims of excessive force" and cites to five lawsuits filed against the NPD; four of those suits are more than fifteen years old. (Doc. 1 at 8.) However, one lawsuit was filed in 2016 and involved an allegation of excessive force after a car chase. With respect to HCSO, Plaintiff states that in "July 2018, an HCSO deputy was arrested" for an "on-duty threat" and that there was a different lawsuit filed in 2016 "stemming from the excessive use of force after a police chase." (Doc. 1 at 8-9.) Plaintiff alleges that MCSO has had repeated complaints about excessive force but Plaintiff makes this allegation upon information and belief and cites no facts.

"A pattern of similar constitutional violations" is sufficient to establish deliberate indifference. *Connick*, 563 U.S. 51, 62 (2011). At this stage of the proceedings, the court finds that Plaintiff has sufficiently alleged deliberate indifference with respect to the NPD and HCSO.[15] However, Plaintiff has not sufficiently alleged deliberate indifference with respect to the MCSO.

Plaintiff contends that this single incident of excessive force as alleged in the complaint is sufficient to show deliberate indifference on the part of the MCSO. "Where a plaintiff seeks to impose municipal liability on the basis of a single incident, the plaintiff must show that the particular illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the entity being sued." *Hollingsworth v. Hill*, 110 F.3d 733, 743 (10th Cir. 1997). Plaintiff has not made any plausible allegation that the allegedly deficient (but unidentified) training, was directed by any "final policymaker," reflecting "a deliberate choice to follow a course of action from among various alternatives." *See, e.g., Thomas v. City of Snyder, Okla.*, 103 F.3d 145 (10th Cir. 1996) (table), 1996 WL

---

[15] At the summary judgment stage, however, previous complaints of excessive force will not support a finding that there was a policy if those complaints lacked merit. The court declines to review the factual circumstances of the previous litigation at this stage of the proceeding.

662453, at *5–6.  Plaintiff has also failed to allege any other factual support regarding the inadequacy of the training to show that the MCSO had knowledge of its inadequacies and deliberate indifference in failing to act.  *Carr*, 337 F.3d at 1229.  Therefore, Plaintiff's claim against Sheriff Montagne in his official capacity for failure to train is dismissed.

With respect to the last element, "the identified deficiency in a city's training program must be closely related to the ultimate injury, so that it actually caused the constitutional violation."  *Id.*  Plaintiff alleges that the inadequate training caused the violations of Holmes' rights.  The harm alleged by Plaintiff is a harm that one would plausibly expect the alleged training failures to cause.  Therefore, as to the claims of failure to train against Sheriff Gay, in his official capacity, and the NPD, the court finds that Plaintiff has stated a claim.

Policy of Failing to Supervise and Discipline

Plaintiff alleges that she has sufficiently alleged "policies or customs that [the Departments] failed to adequately supervise employees or otherwise hold them accountable for constitutional violations similar to what befell Matt."  (Doc. 60 at 70.)

In order to establish this claim, Plaintiff must allege that the Departments had in place (1) a custom or policy of failure to discipline; (2) deliberate indifference on the part of the decision maker, and (3) a causal link to the constitutional deprivation.  *See Gates v. Unified Sch. Dist. No. 449 of Leavenworth Ctny., Kan.*, 996 F.2d 1035, 1041 (10th Cir. 1993).

Plaintiff has alleged that there is a policy of failing to discipline officers for constitutional violations and, as a result, the municipal Defendants encouraged unconstitutional conduct.  Evidence of prior complaints can be sufficient to show that a municipal Defendant and the officials ignored the officers' misconduct.  *See Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009) ("A failure to investigate or reprimand might also cause a future violation by sending

a message to officers that such behavior is tolerated."). With respect to NPD and HCSO, Plaintiff has alleged that there were specific instances of excessive force that were not disciplined, citing to the previous litigation. Plaintiff has failed to cite to any specific incidents concerning the MCSO.

Finally, Plaintiff has alleged that the policies caused Holmes's injuries. The harm alleged by Plaintiff is the harm that one would plausibly expect the alleged policy of failing to discipline would cause. Therefore, as to the claims of failure to train against Sheriff Gay and the NPD, the court finds that Plaintiff has stated a claim.

Conclusion on Municipal Liability

Defendant Montagne's motion to dismiss the municipal claims against him is granted. Defendants Gay and NPD's motions to dismiss the municipal liability claims are denied.

**H. Americans with Disabilities Act: Title II**

Plaintiff asserts a claim under Title II of the Americans with Disabilities Act ("ADA") on the basis that Defendants failed to accommodate Holmes, who has schizophrenia, during the arrest. Defendants move for dismissal of this claim on the basis that the ADA does not apply to arrests and that Plaintiff has failed to state a claim under the ADA.

"Title II of the ADA commands that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'" *City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1772 (2015) (quoting 42 U.S.C. § 12132.) The ADA clearly only applies to public entities. Therefore, to the extent Plaintiff is making claims against the individuals, those claims must be dismissed. Defendants contend that the ADA is inapplicable in this case because Holmes posed a threat to the officers.

The facts alleged in the complaint, however, do not support a finding that Holmes posed a threat. Therefore, the ADA claim is not subject to dismissal on this basis.

Although the Tenth Circuit has not decided whether the ADA is applicable to arrests, it has indicated that "accommodations may be necessary when disabled individuals are arrested." *J.H. ex rel. J.P. v. Bernalillo Cty.*, 806 F.3d 1255, 1261 (10th Cir. 2015). Moreover, other circuits have found that the ADA is applicable during arrest. *See McHenry v. City of Ottawa, Kansas*, No. 16-2736-DDC-JPO, 2017 WL 4269903, at *12 (D. Kan. Sept. 26, 2017) (citing cases). Plaintiff essentially asserts that the accommodation necessary here was for officers to attempt to deescalate the situation or employ non-violent methods of arrest. (Doc. 1 at 16.) This "accommodation" is essentially a repackaging of Plaintiff's excessive force claim into a claim under the ADA. Although the ADA might require an accommodation of a disability upon arrest, depending on the officers' knowledge and the apparent need for accommodation, the court declines to extend the ADA to the facts alleged in this case. Rather, the Fourth Amendment's prohibition of excessive force, and the resulting requirement that use of force be reasonable, is sufficiently flexible to accommodate application to disabled suspects in situations where the officer has knowledge of the disability.

Therefore, the court finds that the facts alleged do not state a claim under the ADA. Defendants' motions to dismiss Plaintiff's ADA claim are granted.

## I. Respondeat Superior

Finally, Plaintiff includes a state law claim for respondeat superior. All Defendants have moved for dismissal of this claim on the basis that it is not a separate legal claim. Plaintiff's responses do not address Defendants' arguments. Respondeat superior is a theory under which

liability is imposed on an employer for tortious acts committed by its employees. *McGuire v. Sifers*, 235 Kan. 368, 378 (Kan. 1984). It is not a separate cause of action by itself.

Therefore, to the extent Plaintiff is attempting to assert a separate cause of action on this theory, it is dismissed.

## V. Conclusion

Defendants' motions to dismiss (Docs. 33, 38, 51, 53, 61) are GRANTED IN PART AND DENIED IN PART.

IT IS SO ORDERED this 17th day of April, 2019.

_s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE