IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

ESTATE OF MATTHEW HOLMES, by
and through administrator, WENDY
COUSER, as administrator and
individually,

       Plaintiff,

V.

CHRIS SOMERS, ANTHONY HAWPE,
JASON ACHILLES, SKYLER HINTON,
JERRY MONTAGNE, in his individual
and official capacity as Sheriff of
McPherson County, BOARD OF
COMMISSIONERS OF MCPHERSON
COUNTY, CITY OF NEWTON, CHAD
GAY, in his individual and official
capacity as Sheriff of Harvey County,
BOARD OF COMMISSIONERS OF
HARVEY COUNTY , UNKNOWN
OFFICERS FROM NEWTON POLICE
DEPARTMENT, UNKNOWN OFFICERS
FROM McPHERSON COUNTY
SHERIFF'S OFFICE, and UNKNOWN
OFFICERS FROM HARVEY COUNTY
SHERIFF'S OFFICE.

       Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 6:18-cv-01221

Hon. John W. Broomes

JURY TRIAL DEMANDED

## **AMENDED COMPLAINT**

Plaintiff, ESTATE OF MATTHEW HOLMES, by and through administrator

WENDY COUSER, who is also suing individually on her own behalf, complains of

Defendants CHRIS SOMERS, ANTHONY HAWPE, JASON ACHILLES, SKYLER

HINTON, JERRY MONTAGNE, in his individual and official capacity as Sheriff of

McPherson County, BOARD OF COMMISSIONERS OF MCPHERSON COUNTY,

CITY OF NEWTON, CHAD GAY, in his individual and official capacity as Sheriff of

Harvey County, BOARD OF COMMISSIONERS OF HARVEY COUNTY,

UNKNOWN OFFICERS FROM NEWTON POLICE DEPARTMENT, UNKNOWN

OFFICERS FROM HARVEY COUNTY SHERIFF'S OFFICE, UNKNOWN

OFFICERS FROM McPHERSON COUNTY SHERIFF'S OFFICE, as follows:

## Introduction

1.      On August 28, 2017, McPherson County Sheriff's Deputy Chris Somers

shot and killed Matthew Holmes without any lawful justification. Defendant Somers

shot Mr. Holmes, an unarmed 24-year-old African-American man who suffered from

schizophrenia. Although Mr. Holmes had fled from the police, immediately before the

shooting, he exited his car slowly with his hands up. Despite clear signs of surrender,

Defendant Hawpe attacked him, including using a police dog as a weapon. Defendant

Hawpe then jumped on top of Mr. Holmes. As Defendant Hawpe physically attacked

Mr. Holmes, Defendant Somers shot Mr. Holmes in the back. Almost simultaneously,

an unknown Harvey County Sheriff's deputy hit Mr. Holmes in the head with the

butt of a shotgun. Defendants' beating of Mr. Holmes did not stop even after

Defendant Somers fatally shot him. Defendant Hawpe continued to punch Mr.

Holmes' face and head, and Defendant Hinton struck Mr. Holmes repeatedly with a

club as Mr. Holmes lay dying. Mr. Holmes was treated as an enemy, not a citizen,

during the entire encounter.

2.      Because of their status as police officers, not one person who beat and killed Mr. Holmes was held accountable for his actions. No criminal charges were ever filed, and no officer faced any discipline.

3.      Tragically, the beating and shooting of an unarmed citizen by a member of the involved law enforcement agencies was not an isolated incident. Instead, each law enforcement agency that employed the offending officers has allowed similar mistreatment of citizens in such a manner that they are *de facto* City policy. Nonetheless, none of the agencies has done anything to address the pervasive excessive force against citizens by its officers. And, like the individual Defendants here, none of the law enforcement agencies have been held accountable for their actions (and inactions) concerning the unlawful use of force against citizens by its officers.

4.      This action, brought under 42 U.S.C. §§ 1983 and 1988, seeks justice—and accountability—for the wrongful, unjustified killing of Matthew Holmes and seeks to deter the wrongful, unjustified shootings and/or excessive force of others at the hands of officers from the Harvey County Sheriff's Office ("HCSO"), McPherson County Sheriff's Office ("MCSO"), and the Newton Police Department ("NPD").

## JURISDICTION AND VENUE

5.      This Court has jurisdiction under 28 U.S.C. § 1331.

6.      Venue is proper under 28 U.S.C. § 1391(b). The events giving rise to the claims asserted herein all occurred within this District, and, upon information and belief, all or most of the parties reside in Harvey or McPherson County.

## PARTIES

7.      The Estate of Matthew Holmes represents the property and legal interests of decedent Matthew Holmes, who was 24 years old when he was killed by Defendants.

8.      Wendy Couser, the mother of Matthew Holmes, is the court-appointed administrator of the Estate of Matthew Holmes. The Estate also includes any legal interests arising out of Matthew Holmes's death that Wendy Couser may have. The Estate brings claims on their behalves. Wendy Couser also brings individual claims on her own behalf.

9.      Defendants Chris Somers and Unknown Officers from the MCSO are law enforcement officers of the MCSO.

10.      Defendants Anthony Hawpe, Jason Achilles, Skyler Hinton, and Unknown Officers from the NPD are all law enforcement officers of the NPD.

11.      Defendants Unknown Officers from the HCSO are all law enforcement officers of the HCSO.

12.       Defendant Jerry Montagne, in his individual and official capacity is the Sheriff of McPherson County who oversees and/or supervises the operations of the MCSO.

13.      Defendant Board of Commissioners of McPherson County oversees the operation of the MCSO, which in turn sets county-wide policy for police officers employed by the Office.

14.     Defendant City of Newton, is a Kansas municipal corporation that operates the NPD, which in turn sets city-wide policy for police officers employed by the Department.

15.     Defendant Chad Gay, in his individual and official capacity is the Sheriff of Harvey County, who oversees and/or supervises the operations of the HCSO, which in turn sets county-wide policy for police officers employed by the Office.

16.     Defendant Board of Commissioners of Harvey County oversees the HCSO, which in turn sets county-wide policy for police officers employed by the Office.

## FACTUAL ALLEGATIONS

17.     On August 28, 2017, Matthew Holmes made a mistake that would lead to his unjustified killing. He angered police by causing a police chase as he fled in his car.

18.     Less than three minutes after he stopped his car, Mr. Holmes exited his car slowly with his hands raised in surrender.

19.     Within 21 seconds of Mr. Holmes getting out of the car with his hands raised in surrender, Defendant Somers fatally shot him in the back.

20.     At no time did any Defendant make any effort to deescalate the situation.

21.     There was no lawful justification for Somers to shoot Mr. Holmes.

22.     Mr. Holmes was unarmed, was the victim of a police assault, and his hands were nowhere near a weapon.

23.     In fact, there is no evidence at all that Mr. Holmes ever touched, let alone took possession of, any weapon during the entire fatal episode.

24.     Nor did Mr. Holmes pose a threat of serious bodily injury to any person from the time that he stopped his car until he was killed.

25.     Rather, almost immediately after getting out of his car with his hands raised, Defendant Achilles shot him with a bean bag gun.

26.     Defendant Achilles, Defendant Somers, and/or other unknown officers also fired an electroshock weapon at Mr. Holmes.

27.     Mr. Holmes was then physically assaulted by Defendant Hawpe who violently drove Mr. Holmes to the ground.

28.     In the 12 seconds between the time that Defendant Hawpe first tackled Holmes and the time that Defendant Somers fatally shot him, an unknown officer from the HCSO (or MCSO or NPD) violently struck Mr. Holmes in the head with the butt of a shotgun.

29.     After Defendant Somers fatally shot Mr. Holmes, Defendant Hawpe repeatedly punched Mr. Holmes in the face and Defendant Hinton violently struck Mr. Holmes' head multiple times with a club.

30.     There was no lawful justification for any of the above use of force.

31.     Instead of using force in a lawful manner justified by law enforcement purposes, Defendants acted out of anger and rage, motivated in part by Mr. Holmes' race.

32.     Defendants' indifference to Mr. Holmes life continued after the fatal shooting when each failed to provide any first aid care to Mr. Holmes. Instead, within

a minute, as Mr. Holmes lay dying alone on the ground, at least one Defendant was getting water for himself to drink.

33.     Defendant Officers can also be heard laughing as Mr. Holmes was dying.

34.     In order to conceal their communications about the shooting, Defendants intentionally turned off the recordings from body cameras.

35.     Matthew Holmes did not immediately die after he was fatally shot and assaulted.

36.     In these moments, Matthew Holmes experienced unspeakable pain due to the gunshot wound he had suffered.

37.     Matthew Holmes died from the gunshot wound he suffered at the hands of Defendant Somers.

38.     In order to provide post-hoc justification, Defendant Somers fabricated that he saw Mr. Holmes with his hands on a gun. There is absolutely no evidence to support this claim, as the McPherson County Attorney's Office admits: "There is no evidence that Holmes actually gained control of Cpl. Hawpe's duty weapon."

39.     Moreover, Defendant Somers' account that Mr. Holmes gained control of a weapon is contradicted by the video of the shooting.

40.     Despite the evidence showing that Mr. Holmes was violently attacked and fatally shot almost immediately after getting out of his car with his hands up and empty, not one officer has been held accountable by his employer for the excessive force.

41.     Instead, following the shooting, all individual Defendants returned to full duty for the various law enforcement agencies.

42.     Each agency's policies and practices were the moving force behind the constitutional violations inflicted against Matthew Holmes

43.     The excessive force used against Matthew Holmes—an unarmed African-American—was not an isolated incident for these law enforcement agencies.

44.     NPD has been the subject of multiple complaints related to claims of excessive force, but has taken no action to remedy the problem. *See Easley v. City of Newton*, Case No. 16-cv-1100 (United States District Court for the District of Kansas); *Eberle v. City of Newton*, 289 F. Supp. 2d 1269 (D. Kan. 2003); *Rodriguez v. City of Newton* (case number unknown) (D. Kan.); *Dunn v. City of Newton*, Case No. 02-1346 (D. Kan.); *Beisel v. McMichael*, Case No. 00-1252 (D. Kan.). The *Easley* case involved the use of excessive force after a police chase. NPD's failure to respond to the use of excessive force by its officers after a police chase led officers in the NPD to believe that they could act with impunity.

45.     On information and belief, Board of Commissioners of McPherson County and/or the Sheriff of MCSO have taken no action to remedy the problem of MCSO officers' use of excessive force despite repeated complaints about excessive use of force by its officers.

46.     The Board of Commissioners of Harvey County and/or the Sheriff of HCSO have taken no action to remedy the problem of HCSO officers' violent misconduct despite multiple incidents. For instance, in July 2018, an HCSO deputy was arrested by a different law enforcement agency for an on-duty threat. Moreover,

18

in 2016, HCSO deputies were the subject of a lawsuit stemming from the excessive use of force after a police chase. *See Easley v. City of Newton*, Case No. 16-cv-1100 (United States District Court for the District of Kansas). HCSO's failure to respond to the use of excessive force by its officers after a police chase led officers in the HCSO to believe that they could act with impunity.

47.     The law enforcement agencies' and supervisors' failures to discipline Defendants here were not the first time they failed to discipline officers who unlawfully used force.

48.     The three Departments' failure to train and discipline officers regarding the improper use of force causes, and/or encourages the use of excessive force, including but not limited to the unconstitutional deadly force, by officers employed by them.

49.     The three Departments' records concerning their failure to train and discipline officers regarding the use of force illustrates their deliberate indifference to the rights of individuals, particularly including the rights of citizens who, like Matthew Holmes, were completely unarmed when they were shot.

50.     In fact, and as further evidence of both the three Departments' policies and their deliberate indifference, since the shooting of Matthew Holmes, other citizens have been the victims of excessive force.

51.     The three Departments' failures to train and discipline their officers with respect to their uses of excessive force also extend to those officers' unconstitutional use of an individual's race when electing to use force. Like Matthew Holmes, a number of victims of excessive force are people of color. As a consequence,

and upon information and belief, the three Departments allow police officers to frequently use race in their policing, including in their decisions to use force.

52.     Officers from the three Departments use race when determining to use force against people of color in a manner disproportionate to their representation in the population, illustrative of their unconstitutional race-based practices.

53.     On information and belief, Officers from the three departments are not trained in how to deal with, and arrest individuals with disabilities.

54.     In particular, the three departments do not train their officers on how to accommodate individuals with mental illness during arrest, including strategies for de-escalation.

55.     The NPD Defendants knew Mr. Holmes personally, and were aware that he suffered from schizophrenia.

56.     Mrs. Couser was employed by the NPD for several years, where she worked with juveniles. As a result, she knew many of the individual defendants personally, including Defendant Hawpe.

57.     These Defendants did not take Mr. Holmes' disability into account during their use of force, and failed to make any accommodations in their interactions with him.

### Plaintiffs' Damages

58.      The Defendants' actions imposed substantial harm on Matthew Holmes during the period of time after which he was shot by Defendant Somers until Matthew Holmes ultimately passed away. The amount of excruciating pain Matthew Holmes felt during those final moments is unquantifiable.

59.     In addition, Matthew Holmes, a 24-year-old man, lost the opportunity to live the rest of his life. Matthew Holmes lost the opportunity to earn wages, have a family, and be with his family. These damages are tragic and substantial.

60.     Wendy Couser, Matthew's mother, has experienced monumental loss as well. Wendy Couser was close with her son and will never again have this relationship nor the opportunity to see Matthew grow. In addition, Wendy has been further harmed by the actions after the shooting—both by the failure of any authorities to bring any accountability to any Defendant, and by the substantial life changes that she has endured through the loss of her son.

### Count I - 42 U.S.C. § 1983
### Excessive Deadly Force

61.     Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

62.     As described in the preceding paragraphs, the individual Defendants' actions toward Matthew Holmes violated his constitutional rights, including but not limited to those under the Fourth and Fourteenth Amendments of the United States Constitution.

63.     The misconduct described in this Count was objectively unreasonable and undertaken with willfulness and reckless indifference to the rights of others. In addition, the misconduct and excessive force described in this Count "shocks the conscience."

## Count II— 42 U.S.C. § 1983
## Equal Protection

64.     Each of the Paragraphs of this Complaint is incorporated as if fully stated herein.

65.      In the manner described in this Complaint, Defendants violated Plaintiff's constitutional rights intentionally subjecting him to unlawful, unequal treatment on the basis of his race in violation of the Fourteenth Amendment of The United States Constitution.

66.     Defendants' misconduct created discriminatory effect by targeting Matthew Holmes for police action based on his race.

67.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Matthew Holmes's constitutional rights.

## Count III—42 U.S.C. § 1983
## Failure to Provide Medical Care

68.     Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

69.     As described in the preceding paragraphs, Defendants' actions toward Matthew Holmes violated his constitutional rights, including but not limited to the Fourth and Fourteenth Amendments of the United States Constitution due to the failure to render any medical care to Matthew Holmes after Defendant Somers detained him by fatally shooting him in the back.

70.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Matthew Holmes's constitutional rights.

## Count IV—42 U.S.C. § 1983
## Wrongful Death

71.     Each of the Paragraphs of this Complaint is incorporated as if fully stated herein.

72.     As described in the preceding paragraphs, Defendants' actions toward Matthew Holmes violated his constitutional rights and wrongfully caused his death, and without those actions, the death of Matthew Holmes would not have occurred.

73.     Prior to his death, Matthew Holmes suffered serious personal injuries including but not limited to severe pain and emotional distress during the period after he was shot but before he died from the gunshot wounds that Defendant Somers inflicted upon him.

74.     Wendy Couser, Matthew Holmes's mother, suffered loss of companionship and mental anguish as a result Mr. Holmes' wrongful death.

75.     Plaintiff, the Estate of Matthew Holmes, which includes Wendy Couser, has standing to assert this Count pursuant to Kansas law.

## Count V—42 U.S.C. § 1983
## Survival Action

76.     Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

77.     As described in the preceding paragraphs, Defendants' actions toward Matthew Holmes violated his constitutional rights and wrongfully caused his death.

78. Prior to his death, Matthew Holmes suffered serious personal injuries including but not limited to severe pain and emotional distress during the period after he was shot and before he died.

79. Plaintiff, the estate of Matthew Holmes has standing to assert this Count pursuant to Kansas law.

### Count VI—42 U.S.C. § 1983
### Municipal and Supervisory Liability

80. Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

81. As described in the preceding paragraphs, the misconduct described in Counts I-III was undertaken under the policy and practice of the City of Newton, Board of Commissioners of McPherson County, the Sheriff of MCSO, Board of Commissioners of Harvey County, and the Sheriff of HCSO such that each Defendant is also liable, in that:

    a. As a matter of both policy and practice, each law enforcement entity and its supervisors encourage, and is thereby the moving force behind, the very type of misconduct at issue in Counts I-III by failing to adequately train, supervise, control and discipline its officers such that its failure to do so manifests deliberate indifference;

    b. As a matter of both policy and practice, each law enforcement entity and its supervisors facilitate the very type of misconduct at issue in Counts I- III by failing to adequately investigate, punish, and discipline prior instances of similar misconduct, thereby leading NPD, MCSO, and HCSO police officers

to believe their actions will never be meaningfully scrutinized. Accordingly, in that way, each law enforcement entity is directly encouraging future uses of excessive deadly force, unlawful detention, failures to intervene, and race- based policing such as that which Plaintiff complains of;

c. Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, officers of each law enforcement entity violate the constitutional rights of individuals in a manner similar to that alleged by Matthew Holmes in Counts I-III on a regular basis, yet each law enforcement entity investigates officer misconduct and makes findings of wrongdoing in a disproportionately small number of cases.

82.     As a result of each law enforcement entity's policies and practices, and the unjustified and unreasonable conduct of Defendants, Matthew Holmes suffered injuries, including severe emotional distress and ultimately death.

## Count IX—42 U.S.C. § 12132
## Americans with Disabilities Act: Title II

83.     Each paragraph of this Complaint is incorporated as if restated fully herein.

84.     Mr. Holmes was diagnosed with schizophrenia, and therefore is a "qualifying person" under the Americans with Disabilities Act.

85.     The Law Enforcement Entities (NPD, MCSO, and HCSO) are "public entities" covered under Title II of the Americans with Disabilities Act.

86.      The Law Enforcement Entities, their agents and employees discriminated against Mr. Holmes based on his disability by failing to reasonably

18

accommodate his schizophrenia during the confrontation. Defendants, their agents and employees did not make any attempt to deescalate the situation, or to employ non-violent methods of arresting Mr. Holmes.

87.     The Law Enforcement Defendants did not provide sufficient training to their law enforcement officers on how to accommodate individuals with mental illness in confrontations and arrest.

88.     Several of the Defendant Officers from NPD knew Mr. Holmes personally, and were aware that he suffered from schizophrenia. Their discriminatory actions in spite of this knowledge was willful, or deliberately indifferent to Mr. Holmes' rights under the Americans with Disabilities Act.

### Count X—State Law Claim
### *Respondeat Superior*

89.     Each paragraph of this Complaint is incorporated as if restated fully herein.

90.     In committing the acts alleged in the preceding paragraphs, Defendants acted at all relevant times within the scope of their employment with each law enforcement entity identified above.

91.     Each law enforcement entity, as principal, is liable for all torts committed by its agents in the scope of their employment, including those of the Individual Defendants.

### Count XI—State Law Claim
### Indemnification

92.     Each of the Paragraphs of this Complaint is incorporated as if fully stated herein.

93.     Each government entity must pay any judgment for damages rendered against any law enforcement officer acting in his/her capacity as a law enforcement officer. K.S.A. 75-6109.

94.     During all times relevant to this complaint, each Individual Defendant was employed by a government entity, and each Individual Defendant acted within the scope of his/her government employment.

95.     Defendants City of Newton, Board of Commissioners of McPherson County, Board of Commissioners of Harvey County, Jerry Montagne, and Chad Gay are liable for any judgment rendered against any of their employees.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants CHRIS SOMERS, ANTHONY HAWPE, JASON ACHILLES, SKYLER HINTON, JERRY MONTAGNE, in his individual and official capacity as Sheriff of McPherson County, BOARD OF COMMISSIONERS OF MCPHERSON COUNTY, CITY OF NEWTON, CHAD GAY, in his individual and official capacity as Sheriff of Harvey County, THE BOARD OF COMMISSIONERS OF HARVEY COUNTY, and UNKNOWN OFFICERS FROM NEWTON POLICE DEPARTMENT; award compensatory damages and attorneys' fees; award punitive damages against each INDIVIDUAL DEFENDANT; and provide any other relief this Court deems just and appropriate.

### JURY DEMAND

Plaintiffs hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED,


/s/ Josh Loevy
*One of Plaintiffs' Attorneys*


Arthur Loevy (admitted *pro hac vice*)
Jon Loevy (admitted *pro hac vice*)
Mark Loevy-Reyes (admitted *pro hac vice*)
Josh Loevy
LOEVY & LOEVY
311 North Aberdeen, Third Floor
Chicago, IL 60607
(312) 243-5900
(312) 243-5902 (fax)