IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ESTATE OF MATTHEW HOLMES, by and )
through administrator, WENDY COUSER, as )
administrator and individually, )
  )
          Plaintiff, )
  )
vs. )    Case No. 18-CV-01221
  )
CHRIS SOMERS, ET AL. )
  )
          Defendants. )
_____ )

**DEFENDANT JASON ACHILLES', JERRRY MONTAGNE'S,
MCPHERSON COUNTY'S AND MCPHERSON COUNTY SHERIFF'S
OFFICE'S JOINT RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION
FOR LEAVE TO FILE AMENDED COMPLAINT**

Defendants Jason Achilles, Jerry Montagne, McPherson County, and McPherson

County Sheriff's Office respectfully submit this response in opposition to Plaintiff's

motion for leave to file amended complaint (Doc. 114).

**STATEMENT OF FACTS**

This is a civil rights case brought by the administrator of the Estate of Matthew

Holmes. In her complaint, Plaintiff asserted eight claims against various officers of the

Newton Police Department ("NPD"), the Harvey County Sheriff's Office ("HCSO") and

the McPherson County Sheriff's Office ("MCSO") relating to the death of her son,

Matthew Holmes. (Doc. 1).

1

The Complaint contained a number of deficiencies which were the subject of multiple motions to dismiss.[1] In April of 2019, the Court ruled on those motions and substantially narrowed Plaintiff's claims, dismissing all but two counts: Count I (Excessive Deadly Force) and Count VI (Municipal Liability). (Doc. 88).

The Court further narrowed the two counts that survived Defendants' motions. It dismissed all claims against HCSO and MCSO, finding that those were not suable entities under Kansas law. (Doc. 88, pp. 10-11). In applying the "*Twiqbal*" plausibility standards, the Court also held that Plaintiff had failed to state claims against Sheriff Montagne in his individual (Doc. 88, p. 20) and official capacities (Doc. 88, p. 28). In doing so, the Court specifically held that Plaintiff had failed to allege "deliberate indifference with respect to the MCSO." (Doc. 88, p. 34).[2] The end result with respect to the McPherson County Defendants was a single count, Count I, excessive force against McPherson County Deputy Achilles. (Doc. 88). [3]   All other claims against the McPherson County Defendants were dismissed.

Since the Court's order on the Defendants' motions to dismiss, discovery has been largely stayed while Sheriff Gay appealed the Court's ruling relating to his sovereign immunity. (Doc. 107). The sovereign immunity issue was decided by the Tenth Circuit Court of Appeals on May 22, 2020. Plaintiff has now filed the subject motion for leave.

---

[1] Docs. 34, 39, 52, 54, 60, 62, 65, 67, 68, 73, 74, 82, 83, 86.

[2] The Court's full discussion with respect to the municipal liability claims is found on pages 32-36 of its memorandum and order. (Doc. 88).

[3] Plaintiff refers to Deputy Achilles as a NPD officer in the original and proposed Amended Complaint. It is not clear why Plaintiff continues with this allegation as the McPherson County defendant previously advised that Achilles is not a NPD officer and Plaintiffs have since received Defendants' initial disclosures which inform Plaintiff, among other things, that Achilles is a McPherson County deputy.

Plaintiff states that her amendment is appropriate because it is intended to "conform the parties with the terms of this Court's order on the various motions to dismiss." (Doc. 114, p. 3). The proposed amended complaint, however, does less to bring the pleadings in conformity with the Court's prior order and more to muddy the water by re-alleging claims that have already been dismissed by the Court.[4] Indeed, the amended complaint that Plaintiff requests permission to file is virtually identical to the one filed last year.

Plaintiff's proposed amendment appears to only make two substantive changes: (1) substituting the respective "Board of Commissioners" for the sheriff's offices of McPherson and Harvey counties; and (2) adding an additional Count for purported indemnification under K.S.A. 75-6109.

For the reasons explained below, the substitution of the McPherson County Board of Commissioners for the McPherson County Sheriff's office is moot, and Plaintiff has no such claim for indemnification. In other words, the proposed amendments would be futile and add nothing to Plaintiff's claims.

---

[4] Although Plaintiff's motion for leave acknowledges prior dismissal of certain claims, the factual allegations contained in the proposed amended complaint are also suspect from a Rule 11(b) standpoint. Plaintiff continues to describe a scene that included Mr. Holmes exiting the vehicle with his hands raised and peacefully surrendering to law enforcement at the conclusion of the vehicle chase. (*E.g.,* Doc. 114-1, ¶ 1). As the Court has previously observed, "the videos belie the assertion that Holmes exited the vehicle with his hands raised. Indeed, the videos depict a much more chaotic scene than suggested by the complaint." (Doc. 88, p. 6, n.5).

Plaintiff would also continue to allege that Defendants failed to provide "any medical care to Matthew Holmes." (Doc. 114-1, ¶ 69). While the McPherson County Defendants understood that Plaintiff's counsel did not have all the videos at the time the complaint was filed – and thus did not have video evidence of the medical treatment provided to Mr. Holmes – Plaintiff now has those videos. Therefore, it appears that, if Plaintiff's amendment were allowed, Plaintiff would not have a good faith basis for the allegation that Defendants failed to provide "any medical care."

## ARGUMENT AND AUTHORITIES

### I.
### STANDARD OF REVIEW

Plaintiff generally references "Federal Rule of Civil Procedure 15" as the legal authority upon which she relies for amendment. Because Rule 15(a)(1) is inapplicable here and no Defendant has provided written consent for Plaintiff's proposed amendment, Plaintiff's motion is to be analyzed under Rule 15(a)(2). Under this subsection, leave may be "freely give[n] when justice so requires." *Id.* Notwithstanding, the Court may in its discretion decline a request for amendment for reasons such as "undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies . . . undue prejudice to the opposing party . . . futility of amendment, etc." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

"A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Hirt v. Unified Sch. Dist. No. 287*, 308 F. Supp. 3d 1157, 1165 (D. Kan. 2018). Thus, "[i]n order to determine whether a proposed amendment is futile, the court must analyze the proposed amendment as if it were before the court on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Collins v. Wal-Mart, Inc.*, 245 F.R.D. 503, 507 (D. Kan. 2007).

The Rule 12(b)(6) standards were previously briefed by the parties in connection with the Defendants' motions to dismiss and relied upon by the Court in ruling on the same. (Doc. 88, pp. 7-10). Those standards apply equally here. In fact – with the exception of the

new "indemnification" claim – the Court's analysis with respect to the futility of

substituting the Board of County Commissioners for the MCSO is exactly the same now

as it was when the Court previously ruled on the motions to dismiss.

## II.
### IT WOULD BE FUTILE TO REPLACE MCSO WITH THE BOARD OF COUNTY COMMISSIONERS WHEN PLAINTIFF FAILED TO STATE A CLAIM AGAINST THE MCSO.

As noted above, Plaintiff seeks leave to substitute the Board of Commissioners for

McPherson County as a Defendant subject to her municipal liability claim, which consists

of both failure to train, and failure to supervise and hold officers accountable for

misconduct theories.

To establish a claim against a municipality for failure to train, Plaintiff must prove:

> (1) The officers exceeded constitutional limits on the use of force; (2) the use of force arose under circumstances that constitute a usual and recurring situations [sic] with which police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the party [sic] of the city toward persons with whom the police officers come into contact, and (4) there is a direct causal link between the constitutional deprivation and the inadequate training.

(Doc. 88, pp. 32-33) (alterations in original) (quoting *Carr v. Castle*, 337 F.3d 1221, 1228

(10th Cir. 2003)). The Court found that, accepting Plaintiff's allegations as true, Plaintiff

had alleged facts sufficient to establish the first two elements of a municipal liability claim

against all Defendants.

The Court diverged, however, with respect to its treatment of the MCSO and

HCSO/NPD on the third and fourth elements. Looking first at Plaintiff's "failure to train"

theory, the Court held that Plaintiff had alleged facts sufficient to support deliberate

indifference as to the NPD and HCSO. (Doc. 88, p. 34). Plaintiff, however, had "not sufficiently alleged deliberate indifference with respect to the MCSO." *Id.* Furthermore, Plaintiff "failed to allege any other factual support regarding the inadequacy of the training to show that the MCSO had knowledge of its inadequacies and deliberate indifference in failing to act." *Id.* (citing *Carr*, 337 F.3d at 1229).

With respect to Plaintiff's "Policy of Failing to Supervise and Discipline" theory, the Court again found that Plaintiff had alleged sufficient facts to state a claim against Sheriff Gay and the NPD, but failed to allege any facts supporting a claim against the MCSO. (Doc. 88, pp. 35-36) ("Plaintiff has failed to cite any specific incidents concerning the MCSO").

In sum, the Court's prior rulings were sufficient to hold that Plaintiff had failed to allege facts sufficient to state a plausible claim for municipal liability against the MCSO and Sheriff Montagne in his official capacity. The amendment Plaintiff proposes does nothing to attempt to fix these legal deficiencies. Plaintiff does not allege any additional facts in her proposed amendment; she simply substitutes the Board of Commissioners for McPherson County as a Defendant for MCSO.

While Plaintiff may have identified a legally suable entity in the Board of Commissioners, this does nothing to change the fact that Plaintiff has failed to allege facts sufficient to state a claim against the subject entity. It should go without saying that substituting one entity for another when the underlying claim itself is the problem, does nothing for Plaintiff.

Plaintiff's request for leave to amend her complaint substituting the Board of Commissioners of McPherson County for the MCSO as the Defendant subject to its municipal liability claims would, thus, be futile.

### III.
### PLAINTIFF DOES NOT HAVE A CLAIM FOR INDEMNIFICATION UNDER THE KANSAS TORT CLAIMS ACT

Plaintiff's second proposed amendment is to add a claim against the "government entities" for indemnification under K.S.A. 75-6109. This statute is found within the Kansas Tort Claims Act. K.S.A. 75-6101 ("K.S.A. 75-6101 to K.S.A. 75-6115, inclusive, shall be known and may be cited as the Kansas tort claims act."). "The Kansas Tort Claims Act establishes a general rule of liability." *Lopez v. Unified Gov't of Wyandotte Cty.*, 31 Kan. App. 2d 923, 923, 75 P.3d 1234, 1234 (2003), *as corrected* (Sept. 18, 2003), *aff'd*, 277 Kan. 682, 89 P.3d 588 (2004).

As its name suggests, the Kansas Tort Claims Act only establishes this general rule of municipal liability (along with limitations for the same) in the context of tort claims arising under state law. It is frequently held that, "Plaintiffs' federal civil rights claims (which encompass their constitutional claims) are not subject to the state law limitations of the Kansas Tort Claims Act. Plaintiffs' state law claims, however, may be subject to the Kansas Tort Claims Act." *Riddle v. City of Ottawa*, 12 Kan. App. 2d 714, 723, 754 P.2d 465, 472 (1988) (citing *Lee v. Wyandotte County*, Kan., 586 F. Supp. 236 (D.Kan.1984)).

The McPherson County Defendants acknowledge that, the Kansas Tort Claims Act establishes municipal liability for the tortious acts or omissions – as in, those tortious acts or omissions actionable under state common law – of municipal employees acting within

the scope of their employment. K.S.A. 75-6103. The statute also provides the municipal

employees with a statutory right to indemnification by the respective government entity.

K.S.A. 75-6109. Again, all of this is done in the context of state law tort claims – and only

state law tort claims. *E.g., Riddle*, 754 P.2d at 472.

Notwithstanding, Plaintiff latches on to K.S.A. 75-6109, alleging that the

governmental entity Defendants have a duty to indemnify their officers and pay any

judgment that may be rendered against them. In relevant part, the statute provides that,

> Except as otherwise provided in the Kansas [tort] claims act, a
> governmental entity is liable, and shall indemnify its
> employees against damages, for injury or damage proximately
> caused by an act or omission of an employee while acting
> within the scope of his or her employment.

K.S.A. 75-6109 (alteration in original). Plaintiff apparently believes this may be extended

beyond state law tort claims and applied to claims arising under federal law for alleged

violations of civil rights, as well. This argument fails for three reasons.

First, the statute cannot be read in a vacuum. *United States v. Lamirand*, 669 F.3d

1091, 1096 (10th Cir. 2012) (citing *United States v. Hinckley*, 550 F.3d 926, 933–34 (10th

Cir.2008) ("We have never before read statutory language in ... a vacuum.")). As the Court

knows, "statutory construction ... is a holistic endeavor." *S. Utah Wilderness All. v. Office

of Surface Mining Reclamation & Enf't*, 620 F.3d 1227, 1239 (10th Cir. 2010). Statutory

"phrases can be clarified by the context of the rest of the statutory scheme, or by

determining which is the only reasonably intended effect." *Id. See also, United States v.

Thomas,* 939 F.3d 1121, 1126 (10th Cir. 2019) ("we should interpret statutory provisions

and the guidelines in a way which gives meaning and effect to each part of the statutory or guideline scheme.").

Here, Plaintiff's effort to divorce K.S.A. 75-6109 from the rest of the Kansas Tort Claims Act presents a number of problems. Fundamentally, a plain reading of the statute – particularly, when taken in context of the remainder of the statutory scheme – does not establish an absolute right to indemnification or municipal liability for all successful claims, of any nature, that a claimant may have against a municipal employee. Rather, it provides a limited basis for such indemnification in the specific context of defending Kansas tort law claims. This is important here because Plaintiff has not asserted any state law tort claims.[5]

Second, even if K.S.A. 75-6109 imposed municipal liability for alleged federal civil rights violations – which it clearly does not – the statute does not provide Plaintiff with the relief that she desires. That is, it is apparent from a plain reading of the Kansas Tort Claims Act as a whole, that the right to request indemnification belongs to the governmental employee. In fact, when it comes to requesting defense of a civil action that would be the subject of indemnification under K.S.A. 75-6109, the government entity is only statutorily obligated to provide such defense "[u]pon request of an employee . . ." K.S.A. 75-6108(a).

Third, if Plaintiff believed she had a claim against the governmental entities under the Kansas Tort Claims Act, Plaintiff failed to provide the requisite notice required by

---

[5] Plaintiff's complaint only included three purported state law "causes of action" for "wrongful death," "survival action" and "respondeat superior." The Court dismissed the wrongful death claim and held that Kansas law does not recognize independent causes of action for "survival" or "respondeat superior. (Doc. 88, pp. 24-25, 37-38).

K.S.A. 12-105b. "Notice is a prerequisite to filing an action against a municipality. Failure to substantially comply with [K.S.A. 12-105b] precludes a plaintiff from obtaining relief in district court." *Sleeth v. Sedan City Hosp.*, 298 Kan. 853, 863, 317 P.3d 782, 789 (2014) (citing *Continental Western Ins. Co. v. Shultz*, 297 Kan. 769, 774, 304 P.3d 1239 (2013)). "The requirements of § 12-105b are conditions precedent and thus must be pleaded in compliance with Fed. R. Civ. P. 9(c)." *Reindl v. City of Leavenworth,* 361 F. Supp. 2d 1294, 1302 (D. Kan. 2005) (quoting *Unified Sch. Dist. No. 457, Finney County, Kan. v. Phifer,* 729 F.Supp. 1298, 1306 (D.Kan.1990)). Plaintiff has not alleged compliance with 12-105b, nor could she.

Finally, with respect to Sheriff Montagne, the purported claim fails for a fourth reason. That is, even if Plaintiff had a valid claim for purported indemnification under K.S.A. 75-6109, Sheriff Montagne would not, in his individual or official capacity, have a duty to indemnify McPherson County deputies. The Kansas Tort Claims Act only imposes the indemnification obligation on the "governmental entity." K.S.A. 75-6109. "'Governmental entity' means state or municipality." K.S.A. 75-6102.

> (a) "State" means the state of Kansas and any department or branch of state government, or any agency, authority, institution or other instrumentality thereof.
>
> (b) "Municipality" means any county, township, city, school district or other political or taxing subdivision of the state, or any agency, authority, institution or other instrumentality thereof.

K.S.A. 75-6102(a),(b). Sheriff Montagne does not fall under either category. In fact, the Court has previously accepted Plaintiff's argument in holding that, for purposes of

Eleventh Amendment Immunity, the sheriffs are not instrumentalities of the state. And the Court has held that the Board of Commissioners for the respective parties are the proper entities to be sued when it comes to the municipal or county defendants. Sheriff Montagne properly falls under the definition of an "employee" per K.S.A. 76-6102(c). He thus, has no indemnification obligations under the Kansas Tort Claims Act.

**IV.**

**IT IS NOT NECESSARY FOR PLAINTIFF TO CREATE PROCEDURAL UNCERTAINTY FOR PURPOSES OF PRESERVING ANY APPEAL RIGHTS SHE MAY HAVE**

For the reasons explained above, the Court should deny Plaintiff's motion for leave because the two substantive amendments contained in the amended complaint would be futile. In addition to the futility of the proposed amendments, Plaintiff's desire to "retain[] claims that were dismissed by this Court only to preserve any possibility of appeal of those claims" raises procedural questions in responding to the same. Although Plaintiff acknowledges – in her motion for leave – that certain claims were previously dismissed, the amended complaint on its face would allege those some claims requiring response by Defendants and subsequent order of the Court. In other words, the proper response to Plaintiff's proposed amended complaint would presumably be for all Defendants to refile motions to dismiss. Those motions would be almost entirely duplicative of the ones previously filed – comprising hundreds of pages of briefing between the parties. The Court would then have to rule on those motions. This would be a waste of judicial resources.

Plaintiff's approach is particularly wasteful and inefficient considering that "[t]he prevailing federal view is that a party does not waive the right to appeal a court's dismissal of claims when leave to amend is given." *Fjellin for Leonard Van Liew Living Tr. v.*

*Penning*, No. 8:14CV77, 2015 WL 13101919, at *1, n.1 (D. Neb. May 11, 2015) (collecting extensive authorities). As explained by the Tenth Circuit, "a rule requiring plaintiffs who file amended complaints to replead claims previously dismissed on their merits in order to preserve those claims merely sets a trap for unsuspecting plaintiffs with no concomitant benefit to the opposing party." *Davis v. TXO Prod. Corp.*, 929 F.2d 1515, 1517 (10th Cir. 1991). Simply put, Plaintiff need not replead claims previously dismissed to preserve any appeal rights that Plaintiff may have. *Davis*, 929 F.2d at 1517-18. The Court should deny Plaintiff's request to unnecessarily replead dismissed claims here.

As noted above, Plaintiff's rationale for seeking leave to amend is purportedly based on the desire to "conform" her complaint with the prior rulings of the Court. If that were truly the case, the amended complaint would include two counts: one for alleged excessive force against the individual Defendants, Somers, Achilles, Hawpe, Hinton, and an unidentified officer; and the other, for municipal liability against Sheriff Gay and the NPD. The proposed amendment, however, goes far beyond that.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for leave to amend should be denied.

Respectfully submitted,

By: /s/ Nathaniel T. Martens
Nathaniel T. Martens (#27172)
Fleeson, Gooing, Coulson & Kitch, L.L.C.
1900 Epic Center
301 N. Main
Wichita, Kansas 67202
Tel: (316) 267-7361
Fax: (316) 267-1754
Email: nmartens@fleeson.com

12

## CERTIFICATE OF SERVICE

I certify that on June 17, 2020, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following:

Arthur Loevy
Jonathan Loevy
Joshua L. Loevy
Mark Loevy-Reyes
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, Illinois 60607
arthur@loevy.com
jon@loevy.com
joshl@loevy.com
mark@loevy.com
*Attorneys for Plaintiff*

Edward L. Keeley
Corey M. Adams
MCDONALD TINKER PA
300 West Douglas, Suite 500
Wichita, Kansas 67202
ekeeley@mcdonaldtinker.com
cadams@mcdonaldtinker.com
*Attorney for Defendants Anthony Hawpe,*
*Skyler Hinton, and City of Newton*

J. Steven Pigg
FISHER, PATTERSON, SAYLER
   & SMITH, LLP
3550 S.W. 5th St.
Topeka, Kansas 66606
spigg@fisherpatterson.com
*Attorney for Defendant Chris Somers*

Toby Crouse
CROUSE LLC
11184 Antioch, No. 253
Overland Park, Kansas 66210
tcrouse@crousellc.com
*Attorneys for Defendant Chad Gay*

David E. Rogers
Kelsey Nicole Frobisher
FOULSTON SIEFKIN LLP
1551 North Waterfront Parkway, Suite 100
Wichita, KS 67206-4466
drogers@foulston.com
kfrobisher@foulston.com
*Attorneys for Defendant Chad Gay*

 /s/ Nathaniel T. Martens
Nathaniel T. Martens

13