IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ESTATE OF MATTHEW HOLMES,
by and through administrator, WENDY COUSER,
as administrator and individually,

                Plaintiff,

v.                                         Case No. 18-1221-JWB

CHRIS SOMERS, et al.,

                Defendants.

**MEMORANDUM AND ORDER**

This case comes before the court on the parties' objections to Magistrate Judge Birzer's Report and Recommendations and corresponding Memorandum and Order. (Docs. 147, 148.) The objections have been fully briefed and the court is prepared to rule. (Docs. 149, 150, 151, 152, 153, 154.) Plaintiff's objection is OVERRULED and Defendant Achilles's objection is SUSTAINED for the reasons stated herein.

**I.    Facts and Procedural History**

This action arises from the shooting of Matthew Holmes by McPherson County Sheriff's Deputy Chris Somers on August 28, 2017, after a car stop. The car stop involved multiple officers from the Harvey County Sheriff's Office ("HCSO"), the McPherson County Sheriff's Office ("MCSO") and the City of Newton Police Department ("NPD"). In the original complaint, Plaintiff alleged claims against named officers and unknown officers from those agencies. The named individual Defendants included Chris Somers and Jason Achilles[1],

---

[1] Although the proposed amended complaint states that Achilles is an officer of the NPD, the McPherson County Defendants have advised Plaintiff that Achilles is a McPherson County Deputy. (*See* Doc. 118 at 2, n.3.)

deputies of the MCSO, and Jerry Montagne, the Sheriff of McPherson County. Defendants Anthony Hawpe and Skyler Hinton are both law enforcement officers of the NPD. Defendant Chad Gay is the Sheriff of Harvey County.

The factual background in this matter has been discussed in this court's prior order. (Doc. 88.) Highly summarized, Holmes was fleeing from the officers in his vehicle on August 28. After the car stop, Holmes exited the vehicle at some point and was shortly thereafter shot by Defendant Somers. This action was then brought by Holmes' mother who is the court-appointed administrator for Holmes' estate.

The original complaint asserted several claims against Defendants including claims of excessive force in violation of the Fourth Amendment and municipal liability claims for failure to train and supervise. (Doc. 1.) All Defendants moved to dismiss the complaint in its entirety on the basis that it failed to state a valid claim for relief and that the individual Defendants were entitled to qualified immunity. On April 17, 2019, the undersigned granted in part and denied in part the multiple motions to dismiss. (Doc. 88.) The court dismissed several claims in substance and all claims against McPherson County and the MCSO, all claims against Sheriff Montagne, all claims against Harvey County and the HCSO, and the individual capacity claim against Sheriff Gay. With respect to the counties and their respective sheriff's offices, the court held that they were not proper parties and that the proper party was that county's commission. (*Id.* at 10-11.) The remaining claims were the excessive force claims against the individual defendants and the municipal liability claims against Sheriff Gay in his official capacity and the City of Newton. Sheriff Gay appealed this court's decision to the Tenth Circuit asserting that he was immune from suit under the Eleventh Amendment. On May 22, 2020, the Tenth Circuit affirmed, and the

mandate was later issued on June 15. (Doc. 115.) Plaintiff then moved to amend her complaint. (Doc. 114.)

Plaintiff's proposed amendment sought to replace the counties and their sheriff's offices with the counties' boards of commissioners. (Doc. 142 at 7.) Relevant to the issues before the court, Plaintiff's amendment also sought to add Sheriff Montagne and the Board of Commissioners of McPherson County ("McPherson County") by including additional facts. This court had previously dismissed these claims on the merits. The proposed amended complaint[2] also sought to add an indemnification claim against all municipalities involved pursuant to K.S.A. 75-6109 and 75-6116 of the Kansas Tort Claims Act.[3]

Defendants objected to the proposed amendment, arguing it was futile in that it was subject to dismissal. Defendant Achilles argued that the additional facts failed to state a municipal liability claim against Montagne and McPherson County. (Doc. 142 at 8-10.) Defendants generally asserted that the Kansas indemnification statutes were not applicable, the claim was premature, and a third party could not seek indemnification under the statutes.[4]

In her ruling, Magistrate Judge Birzer held that Plaintiff's proposed amendment of the municipal liability claims against Montagne and McPherson County was not futile as Plaintiff had included additional factual allegations regarding a specific incident that occurred prior to Holmes' shooting. Viewing the allegations in a light most favorable to Plaintiff, Plaintiff had now "alleged a pattern of constitutional violations specific to the McPherson County defendants"

---

[2] The reference to Plaintiff's proposed amended complaint refers to the pleading attached to Plaintiff's reply brief in support of her motion to amend at Document 129. Although Plaintiff had attached a different proposed amended complaint to her initial motion, Magistrate Judge Birzer considered the new pleading attached to Plaintiff's reply brief after allowing the parties additional briefing. (Doc. 142 at 4-5.)

[3] Plaintiff also sought to replead the remaining claims that were dismissed by this court in order to preserve those claims. Magistrate Judge Birzer denied Plaintiff's request reasoning that those claims did not need to be present in an amended complaint in order to preserve them for appeal purposes. Plaintiff is allowed to incorporate those claims by reference in a footnote. (Doc. 142 at 16.) Plaintiff has not objected to this ruling.

[4] Magistrate Judge Birzer exhaustively discussed each Defendant's arguments and there is no need to restate all of those arguments in this order. (Doc. 142 at 10-14.)

and, therefore, amendment would be permitted. (*Id.* at 19-20.) With respect to Plaintiff's state law claim for indemnification, the magistrate judge determined that the proposed claim was subject to dismissal and was therefore futile. In doing so, Magistrate Judge Birzer recommended that Plaintiff's motion to amend be denied as to the addition of this claim.

Plaintiff filed an objection to the magistrate judge's report and recommendation with respect to the denial of the motion to include the claim of indemnification. (Doc. 148.) Defendant Achilles filed an objection to the decision allowing Plaintiff to add the municipal liability claims against Montagne and McPherson County. (Doc. 147.)

## II. Standard

When a non-dispositive pretrial matter is ruled upon by a magistrate judge and a timely and specific objection to the ruling is made, the district judge is required to "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "Under this clearly erroneous standard, the district court does not conduct a de novo review of the factual findings; instead, it must affirm a magistrate judge's order unless a review of the entire evidence leaves it 'with the definite and firm conviction that a mistake has been committed.'" *United States v. Kaeckell*, No. 19-mc-209-DDC, 2019 WL 6486744, at * 1 (D. Kan. Dec. 3, 2019) (quoting *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988)). The "contrary to law" standard, by contrast, permits the district court to independently review purely legal determinations made by the magistrate judge, and to modify or set them aside if the order "fails to apply or misapplies relevant statutes, case law or rules of procedure." *Id.* (quoting *Walker v. Bd. of Cty. Comm'rs of Sedgwick Cty.*, No. 09-1316-MLB, 2011 2790203, at *2 (D. Kan. July 14, 2011)).

-4-

When a dispositive matter is ruled upon by a magistrate judge, the court is to conduct a de novo review. Fed. R. Civ. P. 72(b)(3). Because Magistrate Judge Birzer denied Plaintiff's amendment to include the claim for indemnity, the court will review that objection under this standard. Achilles's objection to the municipal liability claim is non-dispositive and will be reviewed under the contrary to law standard.

### III. Analysis

#### A. Achille's Objection

Plaintiff has again asserted claims against Montagne, the Sheriff of McPherson County, in both his individual and official capacity, for excessive force and failure to train. The court previously construed Plaintiff's failure to train allegations as 1) a failure to train and 2) a failure to supervise and hold officers accountable for misconduct. (Doc. 88 at 32.) The court dismissed these claims against Montagne in his individual and official capacity. Plaintiff now seeks to replead these claims against Montagne and plead the municipal liability claims against McPherson County. (Doc. 129, Exh. A.) In ruling on the motions to dismiss, this court held that Plaintiff's allegations were not sufficient to state a claim against Montagne in his personal or official capacity.[5] The court held that the factual allegations failed to support a claim of personal liability against Montagne as there were no allegations to support that he was personally involved with the incident nor did the pleadings sufficiently allege that "Montagne was responsible for a policy, that specific policy caused the violation of Holmes' rights, and that Montagne acted with the requisite state of mind." (Doc. 88 at 19) (citing *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010)). With respect to the alleged policies, the court reviewed the allegations in the original complaint, which were as follows:

---

[5] The official capacity claim against Montagne was construed as a claim against McPherson County.

> 45. The excessive force used against Matthew Holmes—an unarmed African-American—was not an isolated incident for these law enforcement agencies.
>
> 47. On information and belief, McPherson County, MCSO, and/or the Sheriff of MCSO have taken no action to remedy the problem of MCSO officers' use of excessive force despite repeated complaints about excessive use of force by its officers.
>
> 49. The law enforcement agencies' and supervisors' failures to discipline Defendants here were not the first time they failed to discipline officers who unlawfully used force.
>
> 50. The three Departments' failure to train and discipline officers regarding the improper use of force causes, and/or encourages the use of excessive force, including but not limited to the unconstitutional deadly force, by officers employed by them.
>
> 51. The three Departments' records concerning their failure to train and discipline officers regarding the use of force illustrates their deliberate indifference to the rights of individuals, particularly including the rights of citizens who, like Matthew Holmes, were completely unarmed when they were shot.
>
> 52. In fact, and as further evidence of both the three Departments' policies and their deliberate indifference, since the shooting of Matthew Holmes, other citizens have been the victims of excessive force.
>
> 53. The three Departments' failures to train and discipline their officers with respect to their uses of excessive force also extend to those officers' unconstitutional use of an individual's race when electing to use force. Like Matthew Holmes, a number of victims of excessive force are people of color. As a consequence, and upon information and belief, the three Departments allow police officers to frequently use race in their policing, including in their decisions to use force.
>
> 54. Officers from the three Departments use race when determining to use force against people of color in a manner disproportionate to their representation in the population, illustrative of their unconstitutional race-based practices.
>
> 55. On information and belief, Officers from the three departments are not trained in how to deal with, and arrest individuals with disabilities.
>
> 56. In particular, the three departments do not train their officers on how to accommodate individuals with mental illness during arrest, including strategies for de-escalation.

(*Id.* at 18-19) (quoting Doc. 1 at 8-10.)

In reviewing the official capacity claim, the court determined that Plaintiff had failed to sufficiently allege deliberate indifference on behalf of Montagne or McPherson officials. With respect to both municipal liability theories, the court held that a single instance of excessive force was not sufficient to establish a policy of inadequate training or failure to discipline. Plaintiff has attempted to cure this deficiency with new allegations. Magistrate Judge Birzer found the new allegations sufficient to allow amendment.

> The new allegations are as follows:
>
> The Board of Commissioners of McPherson County and/or the Sheriff of MCSO have taken no action to remedy the problem of MCSO officers' unlawful use of violence. In particular, the Board of Commissioners of McPherson County and/or the Sheriff of MCSO knew that Defendant Somers was a unique risk to use excessive force. For example, just one month before he fatally shot Mr. Holmes, on July 23, 2017, Defendant Somers was alleged to have committed an aggravated battery. He subsequently faced felony charges for that incident as well as an aggravated battery on December 24, 2017—four months after he fatally shot Mr. Holmes. Despite this knowledge, the Board of Commissioners of McPherson County and/or the Sheriff of MCSO maintained a policy and/or practice of failing to supervise officers who unlawfully used violence that knowingly allowed Defendant Somers, a known threat to use excessive force, to remain on duty, including but not limited to allowing him the ability to use excessive force, including but not limited to excessive deadly force.

(Doc. 129, Exh. A ¶ 46.)

In reviewing a motion to amend, a court is to consider whether the amendment is futile. A proposed amendment is futile if it would be subject to dismissal under Rule 12(b)(6). *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007). Achilles argues that the ruling granting the amendment is erroneous because Plaintiff's claims against Montagne and McPherson County are subject to dismissal. In finding that the municipal liability claim was not futile, Magistrate Judge Birzer noted that the undersigned had emphasized a lack of a "pattern of similar constitutional violations" and the failure to cite to any specific incidents with respect to McPherson County officials. (Doc. 142 at 19.) Construing the allegations in a light most

favorable to Plaintiff, the magistrate judge found that "Plaintiff has now alleged a pattern of constitutional violations specific to the McPherson County defendants." (*Id.* at 19-20.) After reviewing the additional allegations, the court respectfully disagrees with this conclusion.

1. Municipal Liability

In order to impose municipal liability under Section 1983, Plaintiff must identify an official custom or policy that "was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013). The Tenth Circuit has distilled a municipal liability claim into three basic elements: official policy, causation, and state of mind. *Id.* "A challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision." *Id.* at 770 (citation omitted). The causation element is satisfied by showing "a direct causal link between the municipal action and the deprivation of federal rights." *Id.*

> Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee. The causation element is applied with especial rigor when the municipal policy or practice is itself not unconstitutional, for example, when the municipal liability claim is based upon inadequate training, supervision, and deficiencies in hiring.

*Id.* (citations and internal quotations omitted). Finally, where the challenged municipal policy is not itself facially unconstitutional (as is generally the case when a plaintiff proceeds on theories of failure to train, supervise, or discipline) the state of mind element is satisfied by showing that the challenged policy was established "with deliberate indifference as to its known or obvious

consequences." *Id.* quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 407 (1997) (internal quotations omitted).

> The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. In most instances, notice can be established by proving the existence of a pattern of tortious conduct. In a narrow range of circumstances, however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction.

*Id.* at 771 (quotation omitted). Within this general framework, assertions of municipal liability based on policies of failure to train, supervise, discipline, and similar theories may all be evaluated. *See, e.g., id.* 771-80 (evaluating claims for municipal liability based on inadequate hiring, failure to train, failure to investigate claims of misconduct, failure to discipline, and failure to supervise within the foregoing general framework); *Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1284-90 (10th Cir. 2019) (same with respect to claims for inadequate hiring, failure to train, failure to supervise, failure to investigate, and failure to discipline).

In this case, the only relevant change between the original complaint and the proposed amended complaint are the new allegations contained in paragraph 46 of the new pleading. Thus, the question is whether these new allegations cure the deficiencies that led to dismissal of the claims against McPherson County and Sheriff Montagne from the original complaint.

With respect to the City of Newton and Harvey County, Plaintiff's allegations concerned previous incidents of the alleged use of excessive force by officers. (Doc. 88 at 34-35.) By contrast, the new allegations in Plaintiff's proposed amended complaint state that Somers was alleged to have committed aggravated battery on July 23 and on December 24, 2017. First, with respect to the alleged battery on December 24, 2017, incidents occurring after the alleged violation of constitutional rights cannot support an inference that these defendants were on notice

of training or supervision deficiencies. *See Waller*, 932 F.3d at 1286-87. Therefore, the court will not consider the December 24, 2017, incident in determining whether Plaintiff has sufficiently alleged deliberate indifference.

With respect to the July 23 incident, the proposed amendment is silent on the context of that battery. There are no factual allegations to suggest that Somers battered a civilian by the use of excessive force in the performance of his duties. Achilles asserts that the alleged battery is a domestic violence incident which did not result in charges until after Holmes' death. (Doc. 154 at 5.) Plaintiff's proposed amended complaint is silent on the date that Somers was charged with the alleged battery. The court takes judicial notice of Somers' state court criminal docket, Case No. 2018-CR-000243. *See United States v. Ahidley*, 486 F.3d 1184, 1192 n. 5 (10th Cir. 2007) (courts have "discretion to take judicial notice of publicly-filed records ... concerning matters that bear directly upon the disposition of the case at hand.") Based on those records, a complaint was brought against Somers on October 9, 2018, in the District Court of McPherson County, Kansas. The complaint alleged batteries that were designated as domestic violence and they occurred on July 23 and December 24, 2017. According to the court record, Somers was sentenced to probation on January 31, 2020, after entering a guilty plea. From these new allegations, Plaintiff asserts only that McPherson County and Sheriff Montagne are liable based on a policy or practice of failing to supervise officers like Somers who have used violence in some form in the past. (Doc. 129, Exh. A ¶ 46.) Plaintiff attempts to expand the scope of this allegation in her briefs by suggesting that it also supports theories of failure to train and/or discipline. (Doc. 153 at 5-7.) Regardless of which of these theories might apply, Plaintiff's municipal liability claim fails under the general framework set forth above.

As previously noted, the magistrate judge permitted the proposed amendment on the basis that the new allegations show a pattern of constitutional violations, thus remedying the defect identified by this court when it dismissed these claims previously. (Doc. 142 at 19-20.) However, the court finds that this conclusion is contrary to law for two reasons. First, as noted above, the alleged battery from December 2017 occurred after the incident involving Mr. Holmes' death; thus, it may not properly be considered in evaluating whether a pattern of similar constitutional violations existed from which Plaintiff might show deliberate indifference on the part of the policymakers. *See Waller*, 932 F.3d at 1286-87. That leaves only the alleged battery from July 2017, and "one prior incident, even if it was a constitutional violation sufficiently similar to put officials on notice of a problem, does not describe a pattern of violations." *Id.* at 1287 (quotation and alterations omitted). Moreover, the alleged battery was an incident of domestic violence between Somers and his fiancé. While domestic violence is a very serious concern, it is not a constitutional violation. Accordingly, the new allegations in paragraph 46 of the proposed amended complaint show neither a pattern nor a constitutional violation.

Consistent with this conclusion, Plaintiff does not even argue that the new allegations establish a pattern of constitutional violations. Instead, Plaintiff asserts that she does not need to show a pattern of unconstitutional conduct. (Doc. 153 at 8.) Plaintiff essentially argues that these allegations support a finding of municipal culpability because the municipality ignored that Somers was highly likely to inflict this type of injury. (*Id.*) Her argument is to the effect that the claims against McPherson County and Sheriff Montagne fall within that "narrow range of circumstances" where "deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction."  *Schneider*, 717 F.3d at 771.

-11-

Under the circumstances alleged in the proposed amended complaint, in order for Plaintiff to prevail on any of her potential theories, she would have to show that the July 2017 domestic battery was of such a nature as to put McPherson County and/or Sheriff Montagne on notice that Somers was likely to use excessive force against a detainee or arrestee unless they imposed some appropriate form of discipline, supervision, or perhaps training. With respect to the failure-to-train theory, other courts have held that a single incident of domestic violence is not sufficient to establish municipal liability regarding failure to train. *See Hansell v. The City of Atlantic City*, 46 Fed. Appx. 665, 667 (3d Cir. 2002); *Strauss v. Cty. of Berks*, No. CIV.A. 10-3581, 2011 WL 2038546, at *7 (E.D. Pa. May 24, 2011). As for the failure-to-supervise theory, complaints such as this one that fail to allege specific facts regarding how supervision was deficient, or how any allegedly inadequate supervision caused a plaintiff's injury, fails to state a claim under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *See Waller*, 932 F.3d at 1289. And, "[r]arely if ever is the failure of a police department to discipline in a specific instance an adequate basis for municipal liability under *Monell*." *Schneider*, 717 F.3d at 777 (quotation and alteration omitted). The court agrees with the foregoing authority and concludes that the single act of domestic violence alleged in paragraph 46 of the proposed amended complaint, as to which no supporting details are provided, is insufficient to make it highly predictable or plainly obvious to McPherson County or Sheriff Montagne that a failure to train, discipline, or supervise Somers was likely to lead to a use of excessive force against a detainee or arrestee while Somers was on duty. Furthermore, the lack of specific factual allegations to support the supervision claim is doubly fatal.

Since the new allegations in the proposed amended complaint fail to remedy the deficiencies that previously led to dismissal of McPherson County and Sheriff Montagne,

Plaintiff finds herself in the same position with respect to these defendants as she was with her original complaint. As noted in the court's prior order, the allegations in the original complaint, which are for purposes of this issue the same as the remaining allegations in the proposed amended complaint, fail to establish that the single incident of excessive force against Holmes is sufficient to show deliberate indifference. (Doc. 88 at 34-35.) Indeed, although the court observed that the video evidence of the incident paints a starkly different picture of the events leading up to Holmes' death than the allegations in the pleading, the court declined to consider the videos without the benefit of testimony to establish context and resolve important factual ambiguities that were not clear from the videos in isolation. (*Id.* at 1-4.) Plaintiff has reaped the benefit of that decision at the pleading stage, but she must bear the consequences as well.

According to the proposed amended complaint, Holmes exited his vehicle compliantly, unarmed, with his hands raised, in an effort to surrender. Notwithstanding this model behavior by Mr. Holmes, within 30 seconds the officers on the scene collectively punched him, beat him, clubbed him, struck him in the head with the butt of a shotgun, shot him with a bean bag and a taser, attacked him with a police dog, and shot him in the back with a gun. (Doc. 129, Exh. A. ¶¶ 1, 18-29.) These allegations are shocking and, if proven, would undoubtedly establish liability on many, if not all, of the perpetrators for excessive force. However, the Tenth Circuit has repeatedly observed that extreme cases of lawlessness are so obviously wrong that municipalities and supervisors cannot be held liable for failure to train or supervise officers without some prior instances of similar misconduct to put them on notice that training or supervision is necessary.

For example, in *Waller*, a compliant criminal defendant was viciously abused by a deputy sheriff during a court proceeding:

> [W]hile in pretrial detention, Mr. Waller was escorted in handcuffs and other restraints to a courtroom located within the Denver City Jail for a first advisement

> hearing. Mr. Waller remained very respectful and calm throughout the advisement. After the judge finished the advisement, Mr. Waller politely addressed the Court in a normal and subdued voice, stating that he thought the investigation should have come before his arrest. The judge began to respond, but while she was speaking, Deputy Sheriff Brady Lovingier, who had been standing directly behind Mr. Waller, suddenly and without warning, justification, or provocation grabbed Mr. Waller, spun him around, and threw him face first into a nearby glass wall and metal post, causing him to sustain serious and permanent injuries.

*Waller*, 932 F.3d at 1280–81 (alterations and citations omitted).  In rejecting the plaintiff's claim for municipal liability under a failure-to-train theory based on this single instance of unconstitutional behavior, the Tenth Circuit said,

> In *Schneider*, we rejected the plaintiff's municipal liability claim based in part on our conclusion that "'specific or extensive training hardly seems necessary for [officers] to know that sexually assaulting [individuals] is inappropriate behavior.'" 717 F.3d at 774 (quoting *Barney*, 143 F.3d at 1308). As we had previously held in Barney, even assuming that a jail's training course on inmates' rights was inadequate, "we [we]re not persuaded that a plainly obvious consequence of a deficient training program would be the sexual assault of inmates." 143 F.3d at 1308; *see also Andrews v. Fowler*, 98 F.3d 1069, 1077 (8th Cir. 1996) ("In light of the regular law enforcement duties of a police officer, we cannot conclude that there was a patently obvious need for the city to specifically train officers not to rape young women.").
>
> With this reasoning in mind, we note that the conduct at issue here, unlike in many excessive force cases, did not involve an officer making the wrong call regarding the level of force to employ against an individual who posed a threat to the officer or other individuals or was actively resisting arrest. *Cf. Connick*, 563 U.S. at 63–64, 131 S. Ct. 1350 (suggesting that police officers might need to be trained on the use of deadly force when they are "arm[ed] ... with firearms and deploy[ed] ... into the public to capture fleeing felons," as untrained novice officers are unlikely to be "familiar with the constitutional constraints on the use of deadly force"). Deputy Lovingier's use of force was improper not because of the amount of force he used, but because no force was warranted in the first place. Even an untrained law enforcement officer should have been well aware that any use of force in this situation—where a restrained detainee was simply addressing a judge at a hearing in a polite, calm voice—was inappropriate. This case does not involve technical knowledge or ambiguous "gray areas" in the law that would make it "highly predictable" that a deputy sheriff in Deputy Lovingier's position would need "additional specified training" to know how to handle the situation correctly. *Id.* at 71, 131 S. Ct. 1350 (internal quotation marks omitted); *see also R.A. v. City of N.Y.*, 206 F. Supp. 3d 799, 803 (E.D.N.Y. 2016) ("To establish

> deliberate indifference, Plaintiffs must show that Defendant City was on notice that it was highly predictable that Defendant Avalos would face 'a difficult choice of the sort that training or supervision will make less difficult.' The complaints against Defendant Avalos show a conscious decision by Defendant Avalos to commit sexual assault, which does not present a 'difficult choice' [that] further training would prevent." (quoting *Walker v. New York*, 974 F.2d 293, 297 (2d Cir. 1992)) (citations omitted)). Rather, as in *Schneider* and *Barney*, "'specific or extensive training hardly seems necessary,'" *Schneider*, 717 F.3d at 774 (quoting *Barney*, 143 F.3d at 1308) (internal brackets omitted), to put deputy sheriffs on notice that they may not violently assault a restrained detainee who is not acting in a threatening manner.

*Id.* at 1288. As in *Waller*, and the cases cited therein, specific or extensive training or supervision hardly seems necessary to ensure officers are aware that they should not viciously attack, beat, and essentially murder a compliant, unarmed detainee. Accordingly, Plaintiff's claims against McPherson County and Sheriff Montagne for failure to train and supervise their officers on this subject without some prior instances of such misconduct fail. Likewise, Plaintiff's claims based on a similar policy of failing to train on how to de-escalate and otherwise respond when faced with a disabled detainee, as Holmes is alleged to be here, also fail because, according to the proposed amended complaint, Holmes was fully compliant; thus, any alleged disabilities did not affect his behavior and there was no situation to de-escalate.

2. Individual Liability Against Sheriff Montagne

Finally, the proposed amended complaint also reasserts an individual liability claim against Montagne. (Doc. 129, Exh. A ¶¶ 12, 46, 63, 82.) This claim was not explicitly addressed in Magistrate Judge Birzer's order. Rather, the order appears to only allow the amendment of the municipal liability claim. (Doc. 142 at 17-21.)[6] Plaintiff, however, appears to be operating under the assumption that she will be allowed to amend to add a claim against Montagne in his individual capacity. (*See* Doc. 153 at 5-6.) Therefore, the court will address

---

[6] The magistrate judge's order denies Plaintiff's motion to amend to the extent it attempts to replead dismissed claims. (Doc. 142 at 15-16.) This could be construed as denying an individual claim against Montagne. However, out an abundance of caution the court will address whether the claim is futile.

whether Plaintiff's proposed amended complaint to add an individual liability claim against Montagne should be denied as futile.

A supervisor may be personally liable when he is responsible for a policy, that specific policy caused the violation of civil rights, and the supervisor acted with the requisite state of mind. *Dodds*, 614 F.3d at 1199. These are essentially the same elements described above for municipal liability: personal involvement in a policy or custom, causation, and state of mind. *Schneider*, 717 F.3d at 767. "Liability of a supervisor under § 1983 must be predicated on the supervisor's deliberate indifference." *Serna v. Colorado Dep't of Corr.*, 455 F.3d 1146, 1154 (10th Cir. 2006) (citation omitted). This requires that Montagne "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1154-55 (citing *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003)).

The analysis for Sheriff Montagne's liability is essentially the same as that already undertaken for municipal liability, *supra*, and need not be repeated here. In fact, the court noted as much in several places, *supra*, when expressly observing that the allegations were insufficient to establish deliberate indifference on the part of either McPherson County or Sheriff Montagne. To the extent the proposed amended complaint attempts to state a claim against Sheriff Montagne on any other basis, it fails to allege sufficient personal involvement on his part. Therefore, Plaintiff has not plausibly stated a claim of individual liability against Montagne in her proposed amended complaint.

The court finds that the allegations set forth in the proposed amended complaint against Montagne, in his individual and official capacity, and McPherson County do not sufficiently

-16-

state a claim under Tenth Circuit precedent. Achilles's objection to the order is therefore sustained.

### B. Plaintiff's Objection

Plaintiff objects to Magistrate Judge Birzer's report and recommendation denying the addition of the indemnification claim. Plaintiff seeks to amend her complaint to add a claim of indemnification under K.S.A. 75-6109 and 75-6116 against the City of Newton, McPherson County, Harvey County, Montagne and Gay. The indemnification claim is alleged in proposed count XI. The claim asserts that the governmental entities involved must pay "any judgment rendered against any of their employees." (Doc. 129, Exh. A ¶96.) The claim is strictly one for indemnification in the event there is a judgment against one of the individual Defendants. The magistrate judge held that the proposed amendment was futile in that it was subject to dismissal. Primarily, she held that the indemnification statutes do not allow a third party to bring a claim for indemnification, reasoning that the statutes are agreements between the state and its employees without any intended benefit to a prevailing third party. (Doc. 142 at 28.) Magistrate Judge Birzer further held that there were significant concerns regarding the claim's prematurity, the alleged failure to provide notice to Defendants under K.S.A. 12-105b(d), and the propriety of naming Gay and Montagne as Defendants. (Doc. 142 at 29-30.)

Plaintiff objects to the determination that the statutes do not allow a third party to bring an indemnification claim. Plaintiff argues that the authority cited by the court is misplaced and that the plain language of the statutes provides that the governmental entities have a statutory obligation to pay any judgment that meets the terms of the statute. (Doc. 148 at 6-8.) Plaintiff does not address the other significant concerns noted by Magistrate Judge Birzer even though those concerns in the aggregate "tip the scales against amendment." (Doc. 142 at 29.)

Pursuant to K.S.A. 75-6109, "a governmental entity is liable, and shall indemnify its employees against damages, for injury or damage proximately caused by an act or omission of an employee while acting within the scope of his or her employment." Pursuant to K.S.A. 75-6116, if an employee of a governmental entity is or could be subject to personal liability under the civil rights laws of the United States, the governmental entity shall pay the judgment if certain conditions are met.

Neither the Tenth Circuit nor the Kansas state courts have addressed whether a third party may bring an action for indemnification under these statutes. Magistrate Judge Birzer primarily reviewed Tenth Circuit authority addressing a similar, though not identical, Oklahoma indemnity statute, *Lampkin v. Little*, 85 F. App'x. 167 (10th Cir. Jan. 7, 2004), as well as *Jones v. Courtney*, No. 04-3255-JWL-JPO, ECF No. 210 (D. Kan. July 14, 2011) (unpublished) (*Jones I*), a Kansas decision issued by Magistrate Judge O'Hara. In *Lampkin*, the Tenth Circuit held that a third party lacks standing to invoke the Oklahoma indemnity statute. 85 F. App'x at 167. In *Jones I*, the plaintiff had obtained a judgment in federal court against a corrections officer and was trying to collect against the Kansas Department of Corrections (KDOC), who was not an original party to that action. Magistrate Judge O'Hara, although recognizing that there were differences in the Oklahoma and Kansas statutes, including that the Oklahoma statute required that the application be brought in the name of the real party in interest, determined that the underlying purpose of the indemnity statutes was to provide a benefit to the employee and not a third party plaintiff. (Doc. 142 at 27) (citing *Jones I*, No. 04-3255-JWL-JPO, ECF No. 210 at 7-8.) Therefore, Magistrate Judge O'Hara found that the plaintiff could not attempt to collect a judgment from the KDOC that he had obtained against a state of Kansas employee and issued a recommendation to the district court to deny the motion. On review by the district court, the decision was upheld. *Jones*

*v. Courtney*, No. 04-3255-JWL, 2011 WL 3889242 (D. Kan. Aug. 31, 2011). On appeal, the decision was vacated. *Jones v. Courtney*, 466 F. App'x 696 (10th Cir. 2012). Although the Tenth Circuit recognized the basis on which the claim was denied by the district court, it held that the claim was barred by the Eleventh Amendment as the KDOC is an agency of the state of Kansas. *Id.* at 697. Magistrate Judge Birzer found Magistrate Judge O'Hara's reasoning persuasive. (Doc. 142 at 28.)

One day after the magistrate judge issued her opinion in this case, Judge Crabtree ruled on this same issue. *Bledsoe v. Bd. of Cty. Commissioners of Cty. of Jefferson, Kansas*, No. 16-2296-DDC-JPO, 2020 WL 6781389, at *72–73 (D. Kan. Nov. 18, 2020). In *Bledsoe*, the plaintiff sought to include an indemnification claim against the defendant governmental entity. The defendant moved to dismiss, citing *Lampkin*. As discussed by Judge Crabtree, the Oklahoma statute provided that only the employee could file for indemnification within 30 days of the final judgment and that the Tenth Circuit later explained that the holding in *Lampkin* "rested…primarily on specific language" in the statute. *Id.* at *73 (citing *Jones*, 466 F. App'x at 697–98 & 698 n. 2). Judge Crabtree declined to dismiss the claim on the basis that the plaintiff was not entitled to bring the claim, noting that the defendants had not presented any persuasive authority or argument to support dismissal. Judge Crabtree also noted that the defendants had not moved for dismissal on the grounds that the claim was premature. *Id.* at *73, n. 33.

Although Magistrate Judge Birzer discussed that the claim may be premature, she did not primarily base her ruling on those grounds. Defendants argue that the claim is premature. (Doc. 150 at 3.) Under the statutes, the governmental entity is required to pay a judgment under certain circumstances. At this time, Plaintiff has not obtained a judgment. Kansas law provides that an indemnity claim does not accrue until an indemnitee is obligated to pay a judgment. *Lloyds of*

*London Syndicate 2003 v. Fireman's Fund Ins. Co. of Ohio*, No. 15-CV-2681-DDC-GLR, 2016 WL 1170954, at *10 (D. Kan. Mar. 24, 2016) (citing *Barbara Oil Co. v. Kan. Gas Supp. Corp.*, 827 P.2d 24, 37 (Kan. 1992)).  Moreover, if this court allows Plaintiff to pursue this claim, McPherson County will be required to remain in this action as a defendant even though there is not yet a judgment against one of its employees and all other claims against it have been dismissed.

The court finds that Plaintiff's indemnification claim is premature and would be subject to dismissal.  Plaintiff's objection is therefore OVERRULED.

**IV.   Conclusion**

Plaintiff's objection is OVERRULED (Doc. 148) and Defendant Achilles's objection is SUSTAINED (Doc. 147) for the reasons stated herein.  Magistrate Judge Birzer's Report and Recommendations (Doc. 142) is ADOPTED IN PART for the reasons stated herein.  Plaintiff is instructed to file her amended complaint within ten days of this order in accordance with this order and the portions of Magistrate Judge Birzer's memorandum and order (Doc. 143) as to which no objection was lodged.

IT IS SO ORDERED this 25th day of January 2021.

                                                  _s/ John W. Broomes_____
                                                  JOHN W. BROOMES
                                                  UNITED STATES DISTRICT JUDGE