## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

WENDY COUSER, as administrator )
of the Estate of Matthew Holmes, )
                             )
          Plaintiff, )
                             )
v.                             )       **Case No. 18-1221-JWB-GEB**
                             )
CHRIS SOMERS, et al.,       )
                             )
        Defendants.       )
                             )

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Chris Somers' Motion for Protective Order (**ECF No. 205**).  On January 18, 2022, the Court conducted a motion conference. (Order, ECF No. 209.) After careful consideration of all briefing and discussion with counsel, the Court ordered counsel to continue to confer and potentially provide additional information prior to the Court's ruling. (*Id.*) Following additional contact from counsel, for the reasons set forth below, Defendant Somers' motion is **GRANTED**.

## I.    Background[1]

The factual background of this matter has been explored extensively in prior orders (*see* Mem. and Orders, ECF Nos. 18, 36, 143) and will not be repeated here.  Summarily, Plaintiff Wendy Couser filed this 42 U.S.C. § 1983 and § 1988 civil rights case individually

---

[1] Unless otherwise noted, the information recited in this section is taken from the briefs regarding the pending motion (ECF Nos. 205 - 207); from previous orders (*see, e.g.*, ECF No. 143), and from the pleadings (*see* Second Amended Complaint, ECF No. 171, and related Answers, ECF Nos. 172 - 177). This background information should not be construed as judicial findings or factual determinations.

and as administrator of the estate of her son, Matthew Holmes. Mr. Holmes died in August 2017 after leading officers on a high-speed pursuit in central Kansas, after which a confrontation ensued between he and law enforcement officers from three entities: the City of Newton, Harvey County, and McPherson County. Mr. Holmes was shot and died from his wounds.

Plaintiff initially sued multiple law enforcement officers from the three involved agencies. Defendants Anthony Hawpe, Skyler Hinton, and the City of Newton are collectively referenced as the "Newton defendants." Defendants Harvey County Sheriff's Office ("HCSO"), Harvey County, and Sheriff Chad Gay, are collectively denoted the "Harvey County defendants." Defendants Jason Achilles, Sheriff Jerry Montagne, McPherson County, and McPherson County Sheriff's Office ("MCSO") are collectively referred to as the "McPherson County defendants." Defendant Chris Somers is the MCSO Deputy who fired the fatal shot and is sued and defending the case individually. The Complaint also names unknown officers from each of the three entities, bringing the case to an initial total of 14 defendants.

Following early dispositive motions (ECF Nos. 33, 38, 51, 53, and 61) and motions to stay discovery on the case (ECF Nos. 55, 57, 58, and 71), discovery was postponed pending a decision on the dispositive motions (Mem. and Order, ECF No. 87, filed Feb. 21, 2019). On April 17, 2019 Honorable District Judge John W. Broomes granted in part and denied in part the multiple motions to dismiss, disposing of six of Plaintiff's eight

claims[2] in substance. (Mem. and Order, ECF No. 88.) The Court dismissed all claims against McPherson County and the MCSO, all claims against Sheriff Montagne in his individual and official capacities, all claims against Harvey County and the HCSO, and Sheriff Gay in his individual capacity; and found Wendy Couser in her individual capacity was not a proper plaintiff and dismissed her claims.

Plaintiff filed a motion for leave to amend her complaint seeking to replace the counties and their sheriff's offices with the counties' boards of commissioners, to add Sheriff Montagne and the Board of Commissioners of McPherson County, and to add an indemnification claim against the municipalities. (ECF No. 114.) Additional briefing and Court orders resulted. On January 25, 2021, District Judge Broomes resolved all issues of amendment of the claims. (Mem. and Order, ECF No. 157.) The Court found Plaintiff's municipal liability claims against McPherson County and Sheriff Montagne, including any failure-to-train or supervise theory, failed as a matter of law (*Id*. at 12-13), as did any individual claim against Sheriff Montagne. (*Id*. at 16-17.) Relevant to this dispute, the only claim remaining against defendant Somers or any of the other individual McPherson County defendants is excessive deadly force (ECF No. 160, Count I). The only remaining municipal and supervisory liability claims are brought against the City of Newton, Board of Commissioners of Harvey County, and the Sheriff of Harvey County. (*Id*., Count II.)

---

[2] Counts 2 through 5 and Counts 7-8 (notated in the Complaint as Counts IX and X) were dismissed.

Multiple scheduling and other conferences have occurred during the life of this action.[3] On November 17, 2021, at the parties' request the undersigned conducted a discovery conference. During that conference, the parties presented a dispute regarding Defendant Somers' psychiatric records responsive to Plaintiff's Request for Production No. 32. The undersigned ordered Defendant Somers to produce to Plaintiff a privilege log outlining those documents withheld on the basis of psychotherapist-patient privilege or other privilege responsive to RFP No. 32. (Order, ECF No. 201.)

On December 16, 2021, the Court conducted another conference regarding the status of Somers' records. (Order, ECF No. 204.) After discussion with counsel, the undersigned ordered Defendant Somers to produce for in camera review its privilege log and the 19 pages of documents withheld on the basis of psychotherapist-patient privilege or other privilege responsive to Plaintiff's RFP No. 32. The Court established a deadline for Somers to file any motion for protective order regarding said documents, setting a conference for January 18, 2022 to discuss the motion and results of the in-camera review. (*Id*.)

During the January 18, 2022, conference, the Court discussed with Somers' counsel its concerns that some records may have been missing from his production and his privilege log. Additionally, the parties raised for the first time the issue of whether Somers may have waived any applicable privilege by providing his records to a third party through his attempts to obtain disability benefits. The undersigned ordered Somers to review his

---

[3] *See, e.g.,* the following docket entries following conferences: ECF No. 85 (Dec. 4, 2018); ECF No. 106 (June 20, 2019); ECF No. 137 (Oct. 20, 2020); ECF No. 146 (Nov. 30, 2020); ECF No. 201 (Nov. 11, 2021); ECF No. 204 (Dec. 16, 2021).

production and provide any revised privilege log and additional documents to the Court by January 28, and ordered Plaintiff and Somers are to confer regarding the issue of potential waiver of the psychotherapist-patient privilege. (Order, ECF No. 209.)

On January 28, counsel for Somers confirmed to the Court by email he is "not in possession of any additional responsive documents and therefore there are not additions to the privilege log."[4] Additionally, counsel met and conferred on the waiver issues, and Somers' counsel conducted a reasonable search and concluded "none of the disputed records were transmitted to any third party."[5] Plaintiff's counsel confirmed he "is satisfied from counsel's representations that there does not appear to be an issue of waiver."[6]

With these issues apparently resolved, the Court has now had the opportunity to review both the briefing on the issue and the documents themselves and is prepared to rule. As noted above, the parties have conferred among themselves and taken part in two discovery conferences with the undersigned; therefore, the Court finds they have adequately conferred as required by D. Kan. Rule 37.2.

## II.    Defendant Chris Somers' Motion for Protective Order (ECF No. 205)

The only parties involved in the current dispute are Plaintiff and Defendant Somers. No other Defendant takes a formal position on the discovery of Somers' records.

---

[4] Email from Charles Branson to ksd_Birzer_chambers@ksd.uscourts.gov (Jan. 28, 2022, 1:45 p.m. CST) (maintained in chambers file).
[5] *Id.*
[6] Email from Mark Loevy-Reyes to ksd_Birzer_chambers@ksd.uscourts.gov (Jan. 28, 2022, 2:27 p.m. CST) (maintained in chambers file).

Plaintiff's Request for Production No. 32 seeks to discover from Defendant Somers "[a]ll Documents relating to any behavioral or psychological issues concerning you. This request includes but is not limited to any psychological testing or screening of any kind during your hiring process, or during your employment with any law enforcement agency. This request seeks all such Documents without time limits." (ECF No. 205 at 2.) Somers objected on the bases (1) of relevance and (2) that the records were subject to psychotherapist-patient privilege.

A.    **Parties' Positions**

1.    **Defendant Somers' Arguments**

Defendant Somers filed his motion asking that discovery be limited to prevent inquiry into his mental health records and history and, specifically, to preclude Plaintiff from requiring him to produce related documents through written discovery. (ECF No. 205.) Somers presents two primary arguments: 1) he contends only his state of mind and reasonable beliefs at the moment he shot Holmes are relevant (*Id*. at 2); and 2) he argues even if the information were relevant, it is privileged under the psychotherapist-patient privilege. (*Id*. at 6.)

Because no claims remain against Somers' employer and supervisors, the sole claim against him is the use of excessive force under 42 U.S.C. § 1983.  Somers maintains the analysis of his state of mind is only that of his "reasonable perception of the situation at the time it happened." (*Id*. at 3.) Of the factors weighed by courts when determining the reasonableness of an officer's use of force, the most important and fact intensive involves whether the suspect posed an immediate threat to the officers' safety, and the court assesses

"objective reasonableness based on whether the totality of circumstances justified the use of force." (*Id.* at 3-4.[7]) Somers argues because his privileged mental health treatment information does not pertain to the evaluation of his reasonable belief at the time he shot Holmes, the information is not relevant. (*Id.* at 4.)

Somers also argues he has properly responded to Plaintiff's discovery request by producing all non-privileged documents and withholding those covered by privilege, which he confirmed following the January 18, 2022, conference. He claims the information withheld is protected from disclosure by the psychotherapist-patient privilege, and the privilege was not waived in the course of treatment or through this lawsuit.

### 2. Plaintiff's Arguments

Plaintiff argues Somers' records are relevant to his credibility and his memory of the events of the shooting. (ECF No. 206 at 2, 6.) Citing the New Mexico case of *Dorato v. Smith*,[8] Plaintiff contends "Somers' memory here is highly relevant because he is the only witness who chose to use deadly force and the only witness who had the vantage point directly above Defendant Hawpe and [the deceased suspect.]" (*Id.* at 8.) And, at the discovery stage, relevance is not limited to only evidence which will later be admissible at trial. (*Id.*)

Plaintiff also maintains Somers has not borne his burden to prove the applicability of the psychotherapist-patient privilege to each of the items he seeks to withhold. (*Id.* at 9-

---

[7] Def. Somers' Motion, ECF No. 205 at 3-4 (quoting *Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008)).
[8] *Dorato v. Smith*, 163 F. Supp. 3d 837 (D. N.M. 2015).

10.) Plaintiff further reasons if Somers knew his mental health records would be shared with his employer, he has no reasonable expectation of privacy in the records and any privilege is waived. (*Id*. at 10-11.)

As factual support for her arguments, Plaintiff provides excerpts from the transcript of an evidentiary hearing in *State of Kansas v. Christopher Somers*[9] in which Defendant Somers' former spouse testified. (ECF No. 207.) Somers' ex-wife testified he received treatment in 2005 for PTSD when he was sent to anger management classes following an unknown time in jail. (ECF No. 207 at 8.) She testified Somers "shoved her up against the wall and a door" at some point during their marriage, between 2007 and 2016. (*Id*. at 8-9.)

### B.     Legal Standards

#### 1.     Scope of Discovery

Fed. R. Civ. P. 26(b)(1) outlines the scope of discovery. This rule permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable."

---

[9] Transcript of Motion Hearing, *State of Kansas v. Christopher Somers*, No. 18-CR-243 (McPherson Co. Dist. Ct., July 29, 2019) (attached as Exhibit to ECF No. 207).

Relevance at the discovery stage is broad,[10] and does not mean the information obtained would necessarily be admitted at trial. If the party seeking discovery meets its initial, minimal burden to demonstrate its request is relevant on its face,[11] the resisting party cannot rely upon a conclusory statement that the requested discovery is irrelevant.[12] It "must either demonstrate the discovery sought does not come within the broad scope of relevance defined in Rule 26(b)(1), or that it is of such marginal relevance that the potential harm caused by the discovery would outweigh the presumption in favor of broad disclosure."[13] "Courts should lean towards resolving doubt over relevance in favor of discovery,"[14] and the court has broad discretion over discovery matters and to decide when a protective order is appropriate.[15]

Under Rule 26(b)(2)(C), the court must limit discovery if: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery

---

[10] *See Speed Trac Techs., Inc. v. Estes Exp. Lines, Inc.*, No. 08-212-KHV, 2008 WL 2309011 at *3 (D. Kan. June 3, 2008).

[11] *Speed Trac*, 2008 WL 2309011, at *2 (citing *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05–2164-MLB-DWB, 2007 WL 2122437, at *4 (D. Kan. July 20, 2007).

[12] *XPO Logistics Freight v. YRC, Inc.*, No. 16-MC-224-CM-TJJ, 2016 WL 6996275, at *4 (D. Kan. Nov. 30, 2016) (citing *Speed Trac*, 2008 WL 2309011, at *3).

[13] *Id.*

[14] *Folger v. Medicalodges, Inc.*, No. 13-1203-MLB-KMH, 2013 WL 6244155, at *2 (D. Kan. Dec. 3, 2013) (citing *Jackson v. Coach, Inc.*, No. 07–2128–JTM–DWB, 2008 WL 782635, at *4 (D. Kan. Mar. 20, 2008); *Teichgraeber v. Mem'l Union Corp. of Emporia State Univ.*, 932 F. Supp. 1263, 1266 (D. Kan. 1996)).

[15] *See S.E.C. v. Merrill Scott & Assoc., Ltd.*, 600 F.3d 1262, 1271 (10th Cir. 2010) ("The district court has broad discretion over the control of discovery ...") (internal citations omitted); *Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 244 (D. Kan. 2010) ("Federal Rule of Civil Procedure 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required.") (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).

has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Rule 26(c) permits the court to, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. Rule 26(c)(1)(A)-(H) outlines a number of non-exclusive ways in which the court may tailor a protective order, by specifying terms for the discovery, limiting its scope, designating persons present during a deposition, and other types of limitations. The party seeking a protective order bears the burden to demonstrate good cause for protection.[16] To establish good cause, the moving party must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."[17]

"The court has broad discretion to decide when a protective order is appropriate and what degree of protection is required."[18] The Supreme Court acknowledges trial courts are "in the best position to weigh the fairly competing needs and interests of the parties affected by discovery. The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders."[19]

---

[16] *Reynard v. Washburn Univ. of Topeka*, No. 19-4012-HLT-TJJ, 2020 WL 3791876, at *2 (D. Kan. July 7, 2020) (citing *Univ. of Kan. Ctr. for Research, Inc. v. United States*, No. 08-2565-JAR-DJW, 2010 WL 571824, at *3 (D. Kan. Feb. 12, 2010) (citing *Reed v. Bennett*, 193 F.R.D. 689, 691 (D. Kan. 2000)).

[17] *Reynard*, 2020 WL 3791876, at *2 (citing *Univ. of Kan. Ctr. for Research, Inc.*, 2010 WL 571824, at *3 (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981)).

[18] *Manley*, 2020 WL 2766508, at *2 (quoting *Shockey v. Huhtamaki, Inc.*, 280 F.R.D. 598, 600 (D. Kan. 2012).

[19] *Reynard*, 2020 WL 3791876, at *2 (citing *Shockey*, 280 F.R.D. at 600 (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36, (1984)).

### 2.    Psychotherapist-Patient Privilege

Because this case is based upon a federal question, pursuant to Fed. R. Evid. 501 this Court must look to federal common law regarding the existence of any privilege.[20] Federal common law recognizes the psychotherapist-patient privilege.[21] In *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996), the Supreme Court found "confidential communications between a licensed psychotherapist and his or her patients in the course of diagnosis or treatment are protected from compelled disclosure" under Fed. R. Evid. 501.[22] The protection of the privilege extends to "confidential communications made to licensed psychiatrists, psychologists, and social workers in the course of psychotherapy."[23]

To invoke the benefit of the privilege, Defendant Somers bears the burden of showing that (1) the individual he made the statements to "is a licensed psychotherapist or clinical social worker, (2) his communications to the [individual] were confidential and (3) defendant made the communications during the course of diagnosis or treatment."[24]

> To determine whether a meeting occurred "in the course of diagnosis or treatment," the Court considers the totality of the circumstances.[25]  Relevant factors may include the historical nature of the relationship between the individual and his confidante; the patient's purpose in making the communication; the nature of the contact; the timing and location of the communication; objective data, such as medical records, which corroborate

---

[20] *Bruner-McMahon v. Cty. of Sedgwick*, No. 10-1064-KHV-GLR, 2011 WL 3734455, at *3 (D. Kan. Aug. 24, 2011) (citing Fed. R. Evid. 501).
[21] *Id*. (citing *Jaffee v. Redmond,* 518 U.S. 1, 15 (1996)).
[22] *Id*. (citing *Jaffee*, 518 U.S. at 15).
[23] *Jaffee*, 518 U.S. at 15.
[24] *United States v. Hudson*, No. CRIM.A. 13-20063-01, 2013 WL 4047145, at *5 (D. Kan. Aug. 9, 2013) (citing *United States v. Romo,* 413 F.3d 1044, 1047 (9th Cir.2005); *see Jaffee,* 518 U.S. at 16).
[25] *Hudson* (quoting *Romo,* 413 F.3d at 1047).

the counseling contact; and whether mental health services were provided or requested during the communication.[26]

Although the privilege can be waived, the "the waiver inquiry 'turn[s] on the fact that the [patient] knew that the counselor's report would go to" another entity.[27] The Supreme Court stressed "[b]ecause of the sensitive nature of the problems for which individuals consult psychotherapists, disclosure of confidential communications made during counseling sessions may cause embarrassment or disgrace."[28]

To preserve the privilege, the asserting party must respond to discovery requests and assert privilege by submitting a proper privilege log which "describe[s] the nature of the documents, communications, or tangible things not produced or disclosed—and . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." "[I]f a party fails to make the required showing, by not producing a privilege log or by providing an inadequate one, the court may deem the privilege waived."[29]

The party asserting the privilege "must also provide sufficient information to enable the court to determine whether *each element* of the asserted objection is satisfied."[30] Courts in the District of Kansas have generally outlined the requirements for an adequate privilege

---

[26] *Id.*

[27] *Dorato*, 163 F. Supp. 3d at 878 (quoting *Speaker ex rel. Speaker v. County of San Bernardino*, 82 F. Supp. 2d 1105, 1115 (C.D. Cal. 2000)).

[28] *Jaffee*, 518 U.S. at 10.

[29] *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. 669, 671 (D. Kan. 2005).

[30] *Marten v. Yellow Freight Sys. Inc.,* No. 96–2013–GTV, 1998 WL 13244, at *4 (D. Kan. Jan.6, 1998) (citing *Jones v. Boeing Co.,* 163 F.R.D. 15, 17 (D. Kan. 1995)) (emphasis added).

log.[31] "At the very least, a privilege log should contain sufficient information so that the opposing party and the court can evaluate the claimed privilege. If a party fails to carry its burden of establishing that any documents withheld are subject to privilege, the court may conclude that the privilege is waived."[32]

With these standards in mind, this Court evaluates Defendant Somers' motion.

**C.    Analysis**

The Court has conducted a review of Defendant Somers' privilege log and an in-camera review of three sets of documents withheld from production. After such review, the Court finds Somers' privilege logs complies with the above-referenced standard. The withheld documents consist entirely of progress notes prepared by two different physicians. One set of notes was prepared by Shirley Alexander, M.D., a psychiatrist at the Veterans Administration Medical Center in Wichita, Kansas. The other two sets of documents are progress notes from Randall Goering, M.D., a primary care physician.

---

[31] *See In re Syngenta AG MIR 162 Corn Litig.*, No. 14-MD-2591-JWL, 2017 WL 1106257, at *4-5. ("1. A description of the document explaining whether the document is a memorandum, letter, e-mail, etc.; 2. The date upon which the document was prepared; 3. The date of the document (if different from # 2); 4. The identity of the person(s) who prepared the document; 5. The identity of the person(s) for whom the document was prepared, as well as the identities of those to whom the document and copies of the document were directed, 'including an evidentiary showing based on competent evidence supporting any assertion that the document was created under the supervision of an attorney;' 6. The purpose of preparing the document, including an evidentiary showing, based on competent evidence, 'supporting any assertion that the document was prepared in the course of adversarial litigation or in anticipation of a threat of adversarial litigation that was real and imminent;' a similar evidentiary showing that the subject of communications within the document relates to seeking or giving legal advice; and a showing, again based on competent evidence, 'that the documents do not contain or incorporate non-privileged underlying facts;' 7. The number of pages of the document; 8. The party's basis for withholding discovery of the document (i.e., the specific privilege or protection being asserted); and 9. Any other pertinent information necessary to establish the elements of each asserted privilege.")

[32] *Id.* (internal citations omitted).

Although the statements made to Dr. Goering were made to a primary care physician, not a psychiatrist or social worker, it is clear from the Court's inspection of the progress notes that the statements were made in the course of Somers specifically seeking diagnosis and/or treatment from a licensed professional. Other courts have found that other licensed physicians, including general practitioners, may be covered by the psychotherapist-patient privilege if dealing with a mental, as opposed to a physical, health issue.[33] Therefore, the Court finds Dr. Goering's notes also covered by the psychotherapist-patient privilege.

Based on the Court's in camera review, the Court finds all three documents withheld from production are protected from disclosure by the psychotherapist-patient privilege. All documents contained on the privilege log and reviewed by the Court constitute confidential communications between a licensed professional and his or her patient, Somers, in the course of his diagnosis or treatment. Therefore, finding all three documents protected, and given the parties' agreement the privilege has not been waived,[34] an analysis of the relevance of the documents is unnecessary.

---

[33] *See, e.g., Finley v. Johnson Oil Co.*, 199 F.R.D. 301, 303 (S.D. Ind. 2001) (holding the privilege applies to communications to general practitioners dealing with mental health issues); see Kenneth S. Broun, *The Medical Privilege in the Federal Courts-Should It Matter Whether Your Ego or Your Elbow Hurts?*, 38 Loy. L.A. L. Rev. 657 (2004) (noting "seems clear that a physician, including a general practitioner, would be covered by the privilege, providing that he or she were dealing with a mental, as opposed to a physical health issue.").

[34] *See supra* notes 5 and 6 and accompanying text.

**D.      Conclusion**

For the reasons set forth above, Defendant Somers' motion for protective order is

**GRANTED**.  (**ECF No. 205**)

**IT IS SO ORDERED**.

Dated at Wichita, Kansas this 4th day of February, 2022.


  s/ Gwynne E. Birzer
GWYNNE E. BIRZER
United States Magistrate Judge